# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MIDSHIP PIPELINE COMPANY, LLC,** | § § § | |
| *Plaintiff,* | § § | **Case No.: 5:18-cv-858-G** |
| *vs.* | § § § | |
| **TRACT NO. CN-0004.000, 1.504 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.585 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, IN CANADIAN COUNTY, OKLAHOMA; Clayton J. Hufnagel and Christi L. Hufnagel, Trustees of the Clayton J. Hufnagel Trust, a revocable trust dated the 17th day of May 2004; Christi L. Hufnagel and Clayton J. Hufnagel, Trustees of the Christi L. Hufnagel Trust, a revocable trust dated the 17th day of May 2004; Central Land Consulting LLC;** | § § § § § § § § § § § § § § § § § § § § § | **Judge: Hon. Charles Goodwin** |
| **and** | § § | |
| **TRACT NO. CN-0005.000, 1.682 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.577 ACRES OF LAND, MORE OR LESS, TEMPORARY** | § § § § § § | |

WORK SPACE, IN CANADIAN COUNTY, OKLAHOMA; Clayton J. Hufnagel and Christi L. Hufnagel, Trustees of the Clayton J. Hufnagel Trust, a revocable trust dated the 17th day of May 2004; Christi L. Hufnagel and Clayton J. Hufnagel, Trustees of the Christi L. Hufnagel Trust, a revocable trust dated the 17th day of May 2004; Central Land Consulting LLC;

and

TRACT NO. CN-0006.000, 1.674 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.777 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.419 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA; Clayton J. Hufnagel and Christi L. Hufnagel, Trustees of the Clayton J. Hufnagel Trust, a revocable trust dated the 17th day of May 2004; Christi L. Hufnagel and Clayton J. Hufnagel, Trustees of the Christi L. Hufnagel Trust, a revocable trust dated the 17th day of May 2004; Central Land Consulting LLC;

and

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

2

**TRACT NO. CN-0007.010, 691 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.630 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.246 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA; Tracy G. Maass; Central Land Consulting LLC;**

**and**

**TRACT NO. CN-0011.000, 2.656 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.605 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.257 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA, Tracy G. Maass; Central Land Consulting LLC;**

**and**

**TRACT NO. CN-0013.000, 0.011 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.026 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, IN CANADIAN**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

3

COUNTY, OKLAHOMA, David John Rother, Bob Alan Rother, Mark D. Rother and Aletia R. Rother Living Trust dated September 22, 2010, Mark D. Rother and Aletia R. Rother, Trustees; Central Land Consulting LLC;

and

TRACT NO. CN-0014.000, 3.140 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.117 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.220 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA; Wanda R. Hansen and Christian J. Hansen, Jr., Trustees, or their successors in trust, under the Wanda R. Hansen Living Trust, dated August 23, 2000; Christian J. Hansen, Jr. and Wanda R. Hansen, Trustees, or their successors in trust, under the C. J. Hansen, Jr. Living Trust, dated August 23, 2000; Canadian Hills Wind, LLC; Central Land Consulting LLC;

and

TRACT NO. CN-0015.000, 3.079 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY),

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

4

3.036 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.231 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA, David John Rother; Bob Alan Rother; Mark D. Rother and Aletia R. Rother Living Trust dated September 22, 2010, Mark D. Rother and Aletia R. Rother, Trustees; Central Land Consulting LLC;

and

TRACT NO. CN-0020.000, 1.509 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.509 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.272 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA; Thomas J. Leck Revocable Trust; Canadian Hills Wind, LLC; Central Land Consulting LLC;

and

TRACT NO. CN-0027.000, 0.661 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.603 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

SPACE, AND 0.491 ACRES OF §
LAND, MORE OR LESS, §
ADDITIONAL TEMPORARY §
WORK SPACE IN CANADIAN §
COUNTY, OKLAHOMA; §
Charles A. Snyder and Diana M. §
Snyder; Central Land §
Consulting LLC; §
§
§
and §
§
TRACT NO. CN-0038.010, §
 2.262 ACRES OF LAND, §
MORE OR LESS, §
PERMANENT EASEMENT §
(PIPELINE RIGHT-OF-WAY), §
2.198 ACRES OF LAND, MORE §
OR LESS, TEMPORARY §
WORK SPACE, AND 0.253 §
ACRES OF LAND, MORE OR §
LESS, ADDITIONAL §
TEMPORARY WORK SPACE §
IN CANADIAN COUNTY, §
OKLAHOMA; Betty A. Crowly; §
Central Land Consulting LLC; §
§
and §
§
TRACT NO. CN-0039.000, §
 1.389 ACRES OF LAND, §
MORE OR LESS, §
PERMANENT EASEMENT §
(PIPELINE RIGHT-OF-WAY), §
1.453 ACRES OF LAND, MORE §
OR LESS, TEMPORARY §
WORK SPACE, AND 0.252 §
ACRES OF LAND, MORE OR §
LESS, ADDITIONAL §
TEMPORARY WORK SPACE §
IN CANADIAN COUNTY, §
OKLAHOMA; Betty A. Crowly; §
Central Land Consulting LLC; §

and                                              §
                                                 §
                                                 §
TRACT NO. CN-0047.000,                           §
3.032 ACRES OF LAND,                             §
MORE        OR      LESS,                         §
PERMANENT   EASEMENT                             §
(PIPELINE RIGHT-OF-WAY),                         §
3.017 ACRES OF LAND, MORE                        §
OR    LESS,    TEMPORARY                         §
WORK SPACE, AND 0.172                            §
ACRES OF LAND, MORE OR                           §
LESS,          ADDITIONAL                        §
TEMPORARY WORK SPACE                             §
IN    CANADIAN    COUNTY,                        §
OKLAHOMA;         Michael                        §
Hufnagel; Thomas Hufnagel;                       §
Michael Hufnagel and Ann                         §
Hufnagel;    Central    Land                     §
Consulting LLC;                                  §
                                                 §
and                                              §
                                                 §
TRACT NO. CN-0052.000,                           §
1.482 ACRES OF LAND, MORE                        §
OR    LESS,    PERMANENT                         §
EASEMENT      (PIPELINE                          §
RIGHT-OF-WAY),        1.390                       §
ACRES OF LAND, MORE OR                           §
LESS, TEMPORARY WORK                             §
SPACE, AND 0.631 ACRES OF                        §
LAND,   MORE   OR   LESS,                        §
ADDITIONAL   TEMPORARY                           §
WORK SPACE IN CANADIAN                           §
COUNTY,       OKLAHOMA;                          §
Travis D. Jacobs; Central Land                   §
Consulting LLC;                                  §
                                                 §
and                                              §
                                                 §
TRACT NO. CN-0054.000,                           §
3.551 ACRES OF LAND, MORE                        §
OR    LESS,    PERMANENT                         §

**EASEMENT (PIPELINE RIGHT-OF-WAY), 3.608 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.809 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA; Marian Elizabeth Rother; Joan Margaret Watkins; Central Land Consulting LLC;**

**and**

**TRACT NO. CN-0060.000, 2.631 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.576 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.913 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA; The Allen Dale and Cindy Lou Stover Revocable Trust, Allen Dale and Cindy Lou Stover, Co-Trustees; Central Land Consulting LLC;**

**and**

**TRACT NO. CN-0062.000, 1.413 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.313 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.844 ACRES OF LAND, MORE OR LESS,**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

ADDITIONAL TEMPORARY
WORK SPACE IN CANADIAN
COUNTY, OKLAHOMA; Allen
Dale and Cindy Lou Stover, Co-
Trustees of the Allen Dale and
Cindy Lou Stover Revocable
Trust; Central Land Consulting
LLC;

and

TRACT NO. CN-0069.000,
0.776 ACRES OF LAND,
MORE OR LESS,
PERMANENT EASEMENT
(PIPELINE RIGHT-OF-WAY),
0.776 ACRES OF LAND, MORE
OR LESS, TEMPORARY
WORK SPACE, AND 0.183
ACRES OF LAND, MORE OR
LESS, ADDITIONAL
TEMPORARY WORK SPACE,
AND 0.369 ACRES OF LAND,
MORE OR LESS,
PERMANENT ROAD ACCESS
EASEMENT, IN CANADIAN
COUNTY, OKLAHOMA,
Calumet Industries, Inc.;
Central Land Consulting LLC;

and

TRACT NO. CN-0071.000;
2.314 ACRES OF LAND,
MORE OR LESS,
PERMANENT EASEMENT
(PIPELINE RIGHT-OF-WAY),
1.714 ACRES OF LAND, MORE
OR LESS, TEMPORARY
WORK SPACE, 0.688 ACRES
OF LAND, MORE OR LESS,
ADDITIONAL TEMPORARY

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

9

**WORK SPACE, 0.001 ACRES OF LAND, MORE OR LESS, PERMANENT ROAD ACCESS EASEMENT, AND 0.080 ACRES OF LAND, MORE OR LESS, SURFACE SITE EASEMENT, IN CANADIAN COUNTY, OKLAHOMA; Christy Lou Fees, Successor Trustee of the Wysetta V. Todd Farm Trust No. II; Central Land Consulting LLC;**

**and**

**TRACT NO. CN-0074.000, 2.537 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.955 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.783 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.573 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT, IN CANADIAN COUNTY, OKLAHOMA; Caldwell and Sons Drilling, Inc.;**

**and**

**TRACT NO. CN-0090.010, 0.336 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.403 ACRES OF LAND, MORE OR LESS, TEMPORARY**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

10

WORK SPACE, AND 0.258 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA; John D. Von Tungeln; Central Land Consulting LLC;

and

TRACT NO. CN-0097.010, 2.523 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.465 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.264 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA; Betty J. Johnston; Sheila Preno; Central Land Consulting, LLC;

and

TRACT NO. CN-0104.010, 2.126 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.185 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.302 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN CANADIAN COUNTY, OKLAHOMA, John D. Von

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**Tungeln; Central Land Consulting LLC;**

**and**

**TRACT NO. CN-0107.030, 1.896 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), IN CANADIAN COUNTY, OKLAHOMA; Billy Long; Melvin Long; Central Land Consulting;**

**and**

**TRACT NO. GR-0111.010, 2.298 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.448 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.299 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Fitzgerald Farming and Ranching, LLC; Central Land Consulting LLC;**

**and**

**TRACT NO. GR-0113.010, 1,861 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1,928 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.807 ACRES OF**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

LAND, MORE OR LESS, §
ADDITIONAL TEMPORARY §
WORK SPACE IN GRADY §
COUNTY, OKLAHOMA; The §
Betty C. Starkey Revocable §
Trust Dated December 17, 2010, §
Betty C. Starkey and David R. §
Starkey, Co-Trustees; The Trust §
B Created by James R. Starkey §
Revocable Trust, Betty C. §
Starkey and David R. Starkey, §
Co-Trustees; Central Land §
Consulting LLC; §
§
§
and §
§
TRACT NO. GR-0115.010, §
0.610 ACRES OF LAND, MORE §
OR LESS, PERMANENT §
EASEMENT (PIPELINE §
RIGHT-OF-WAY), 0.683 §
ACRES OF LAND, MORE OR §
LESS, TEMPORARY WORK §
SPACE, AND 0.397 ACRES OF §
LAND, MORE OR LESS, §
ADDITIONAL TEMPORARY §
WORK SPACE, IN GRADY §
COUNTY, OKLAHOMA; The §
Betty C. Starkey Revocable §
Trust Dated December 17, 2010, §
Betty C. Starkey and David R. §
Starkey, Co-Trustees; The Trust §
B Created by James R. Starkey §
Revocable Trust, Betty C. §
Starkey and David R. Starkey, §
Co-Trustees; Central Land §
Consulting LLC; §
§
and §
§
TRACT NO. GR-0117.010, §

13

2.026 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.109 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.230 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Ventris Family Trust, a revocable trust dated December 15, 2008, Eldon R. Ventris and Barbara J. Ventris, Co-Trustees; Central Land Consulting LLC;

and

TRACT NO. GR-0119.010, 3.298 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.233 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.580 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Fitzgerald Farming and Ranching, LLC; Chisholm Trail Farm Credit FCLA; Central Land Consulting LLC;

and

TRACT NO. GR-0126.010, 0.161 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**(PIPELINE RIGHT-OF-WAY), 0.089 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, IN GRADY COUNTY, OKLAHOMA; Mark Massey; Carrie Massey; Liberty National Bank; Chickasha Bank & Trust Company; Central Land Consulting LLC;**

**and**

**TRACT NO. GR-0127.010, 1.846 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.846 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.192 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA, Martin Dale Hardesty; Sharon Ann Hardesty; Betty Ann Lindheim; Central Land Consulting LLC; Travis Peak Resources, LLC; TPR Mid-Continent, LLC;**

**and**

**TRACT NO. GR-0129.010, 1.844 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.844 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.016 ACRES OF LAND, MORE OR LESS,**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

15

TEMPORARY ROAD ACCESS EASEMENT IN GRADY COUNTY, OKLAHOMA; Chris J McComas and Christy D McComas; Central Land Consulting LLC;

and

TRACT NO. GR-0130.010, 2.712 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.714 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 1.138 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT IN GRADY COUNTY, OKLAHOMA; Chris J McComas and Christy D McComas; Central Land Consulting LLC;

and

TRACT NO. GR-0131.010, 0.784 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.843 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.431 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK, AND 0.063 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT SPACE IN GRADY COUNTY,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

16

OKLAHOMA; Chris J McComas and Christy D McComas; Central Land Consulting LLC;

and

TRACT NO. GR-0132.010, 2.164 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.026 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 1.308 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.147 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT IN GRADY COUNTY, OKLAHOMA; Joe McComas and Arlene McComas, Co-Trustees of the Joe W. McComas Revocable Trust dated December 11, 2000; Central Land Consulting LLC;

and

TRACT NO. GR-0133.010, 1.956 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.960 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.193 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

OKLAHOMA; Wesley and Mary E Burchfield, Co-Trustees of the Wesley and Mary E Burchfield Revocable Living Trust; Minco Wind, LLC, Assignee of Boulevard Associates LLC; Minco Wind II, LLC; Central Land Consulting LLC;

and

TRACT NO. GR-0134.010, 1.761 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.765 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.844 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Wesley and Mary E Burchfield, Trustees of the Wesley and Mary E Burchfield revocable living trust; Boulevard Associates LLC; Minco Wind, LLC; Minco Wind II, LLC; Central Land Consulting LLC;

and

TRACT NO. GR-0135.010, 0.275 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.342 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.096 ACRES OF LAND, MORE OR

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Wesley and Mary E Burchfield, Trustees of the Wesley and Mary E Burchfield Revocable Living Trust; Boulevard Associates LLC; Minco Wind, LLC; Minco Wind II, LLC; Central Land Consulting LLC;**

**and**

**TRACT NO. GR-0137.010, 3.688 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.682 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.645 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, 0.080 ACRES OF LAND, MORE OR LESS, SURFACE SITE EASEMENT, AND 0.095 ACRES OF LAND, MORE OR LESS, PERMANENT ROAD ACCESS EASEMENT, IN GRADY COUNTY, OKLAHOMA; Chris Joe McComas; Janice McComas Estes; Boulevard Associates LLC; Minco Wind, LLC; Minco Wind II, LLC; Central Land Consulting LLC;**

**and**

**TRACT NO. GR-0138.010, 0.456 ACRES OF LAND, MORE OR LESS,**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.094 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Chris Joe McComas; Janice McComas Estes; Central Land Consulting LLC;

and

TRACT NO. GR-0139.010, 1.347 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.321 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.768 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.010 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT IN GRADY COUNTY, OKLAHOMA; Jimmie L Vickrey; Shelly R Vickrey; Chisholm Trail Farm Credit FCLA; Boulevard Associates LLC; Minco Wind, LLC; Minco Wind II, LLC; Central Land Consulting LLC;

and

TRACT NO. GR-0140.010, 0.850 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.073 ACRES OF LAND, MORE

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

OR LESS, TEMPORARY WORK SPACE, AND 0.164 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Jimmie L Vickrey; Shelly R Vickrey; Chisholm Trail Farm Credit FCLA; Boulevard Associates LLC; Minco Wind, LLC; Minco Wind II, LLC; Central Land Consulting LLC;

and

TRACT NO. GR-0141.020, 1.617 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT IN GRADY COUNTY, OKLAHOMA; Jimmie L Vickrey; Shelly R Vickrey; Chisholm Trail Farm Credit FCLA; Boulevard Associates LLC; Minco Wind, LLC; Minco Wind II, LLC; Central Land Consulting LLC;

and

TRACT NO. GR-0147.010, 3.548 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.684 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.643 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.705 ACRES OF LAND, MORE OR

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

21

**LESS, TEMPORARY ROAD ACCESS EASEMENT IN GRADY COUNTY, OKLAHOMA;** Deanna Hardesty, Trustee of the Deanna Hardesty Living Trust; Byron Alan Hardesty and Abigail Karen Hardesty; Farm Credit of Central Oklahoma; Central Land Consulting LLC;

and

**TRACT NO. GR-0149.010, 1.355 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.255 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, IN GRADY COUNTY, OKLAHOMA;** Terry Garrett and Wynetta Garrett; Central Land Consulting LLC;

and

**TRACT NO. GR-0150.010, 1.635 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.634 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.160 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA,** Terry Garrett; Central Land Consulting LLC;

and

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**TRACT NO. GR-0151.010, 2.089 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.089 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.186 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Terry Garrett; Central Land Consulting LLC;**

**and**

**TRACT NO. GR-0169.010, 3.009 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.060 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.628 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 1.025 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT, IN GRADY COUNTY, OKLAHOMA; Chuck's Rig Repair LLC, if in existence, or if defunct, its unknown successors, trustees, or assigns; Central Land Consulting LLC; Chisholm Trail Farm Credit FCLA; D&H Rig Service, Ltd.; Oklahoma Unemployment Tax Commission;**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

and                                    §
                                       §
**TRACT NO. GR-0170.010,**             §
**2.420 ACRES OF LAND,**               §
**MORE OR LESS,**                      §
**PERMANENT EASEMENT**                 §
**(PIPELINE RIGHT-OF-WAY),**           §
**2.370 ACRES OF LAND, MORE**          §
**OR LESS, TEMPORARY**                 §
**WORK SPACE, AND 0.503**              §
**ACRES OF LAND, MORE OR**             §
**LESS, ADDITIONAL**                   §
**TEMPORARY WORK SPACE**               §
**IN GRADY COUNTY,**                   §
**OKLAHOMA; Chisholm Trail**           §
**Farm Credit FCLA;**                  §
                                       §
and                                    §
                                       §
**TRACT NO. GR-0171.010,**             §
**1.515 ACRES OF LAND,**               §
**MORE OR LESS,**                      §
**PERMANENT EASEMENT**                 §
**(PIPELINE RIGHT-OF-WAY),**           §
**1.456 ACRES OF LAND, MORE**          §
**OR LESS, TEMPORARY**                 §
**WORK SPACE, AND 0.172**              §
**ACRES OF LAND, MORE OR**             §
**LESS, ADDITIONAL**                   §
**TEMPORARY WORK SPACE**               §
**IN GRADY COUNTY,**                   §
**OKLAHOMA; Chisholm Trail**           §
**Farm Credit FCLA;**                  §
                                       §
and                                    §
                                       §
**TRACT NO. GR-0186.010,**             §
**5.622 ACRES OF LAND,**               §
**MORE OR LESS,**                      §
**PERMANENT EASEMENT**                 §
**(PIPELINE RIGHT-OF-WAY),**           §
**5.711 ACRES OF LAND, MORE**          §
**OR LESS, TEMPORARY**                 §

WORK SPACE, AND 0.186 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Chisholm Trail Farm Credit FCLA; Martin Farms, Inc.; Cardinal Midstream III, LLC;

and

TRACT NO. GR-0190.010, 2.861 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.802 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.387 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Chisholm Trail Farm Credit FCLA;

and

TRACT NO. GR-0192.010, 2.625 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.607 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.704 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; JP Morgan Chase Bank; Farm Credit of

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**Western Oklahoma; GTP Acquisition Partners II, LLC;**

**and**

**TRACT NO. GR-0192.020, 1.161 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.104 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.476 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Farm Service Agency; Chisholm Trail Farm Credit PCA;**

**and**

**TRACT NO. GR-0196.010, 1.690 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.690 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.242 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.0812 ACRES OF LAND, MORE OR LESS TEMPORARY ROAD ACCESS EASEMENT, IN GRADY COUNTY, OKLAHOMA; Norman G. Sloan and Marilyn G. Sloan, Trustees of the Norman G. Sloan Grantor Trust dated September 13, 1995,**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

26

and any amendments thereto; §
Central Land Consulting LLC; §
§
and §
§
§
TRACT NO. GR-0197.010, §
0.904 ACRES OF LAND, §
MORE OR LESS, §
PERMANENT EASEMENT §
(PIPELINE RIGHT-OF-WAY), §
0.931 ACRES OF LAND, MORE §
OR LESS, TEMPORARY §
WORK SPACE, AND 0.180 §
ACRES OF LAND, MORE OR §
LESS, ADDITIONAL §
TEMPORARY WORK SPACE §
IN GRADY COUNTY, §
OKLAHOMA; Farm Credit of §
Western Oklahoma FLCA; §
§
and §
§
TRACT NO. GR-0210.010, §
1.590 ACRES OF LAND, §
MORE OR LESS, §
PERMANENT EASEMENT §
(PIPELINE RIGHT-OF-WAY), §
1.558 ACRES OF LAND, MORE §
OR LESS, TEMPORARY §
WORK SPACE, AND 0.758 §
ACRES OF LAND, MORE OR §
LESS, ADDITIONAL §
TEMPORARY WORK SPACE §
IN GRADY COUNTY, §
OKLAHOMA; Phillip S. §
Schmidt and Kambi K. Schmidt; §
§
and §
§
TRACT NO. GR-0289.010, §
1.750 ACRES OF LAND, §
MORE OR LESS, §
PERMANENT EASEMENT §

**(PIPELINE RIGHT-OF-WAY), 1.823 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.672 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.182 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT, IN GRADY COUNTY, OKLAHOMA; John H Mason and Martha Mason; Central Land Consulting LLC;**

**and**

**TRACT NO. GR-0310.000, 2.328 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.441 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.745 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; First National Bank and Trust Company, Corporate Trustee of the James L. McElvany and Linda R. McElvany Irrevocable Trust I dated the 28th day of December, 2012; Central Land Consulting LLC;**

**and**

**TRACT NO. GR-0312.010, 3.076 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

RIGHT-OF-WAY), 3.053 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.378 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.698 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT, IN GRADY COUNTY, OKLAHOMA; Lyndel D. Shelby and Lanelle Shelby; Chris Witt and Chancey Witt; Central Land Consulting LLC;

and

TRACT NO. GR-0313.010, 3.132 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.253 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.429 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.049 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT AND 1.957 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT IN GRADY COUNTY, OKLAHOMA; Melford Scott and Margaret L. Scott, Trustees of the Melford Scott and Margaret L. Scott Revocable Trust dated the 7th day of July, 2005; Central Land Consulting LLC;

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

29

and

**TRACT NO. GR-0314.010, 1.694 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.683 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.224 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Connie Gayle Huseman; Central Land Consulting LLC;**

and

**TRACT NO. GR-0322.010, 4.542 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 4.542 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.918 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Melford L. Scott and Margaret L. Scott, Trustees of the Melford L. Scott and Margaret L. Scott Revocable Trust; Central Land Consulting LLC;**

and

**TRACT NO. GR-0336.000,**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**2.526 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.526 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, IN GRADY COUNTY, OKLAHOMA; Sandy Creek Farms, Inc.; Central Land Consulting LLC; The First National Bank & Trust Co.;**

**and**

**TRACT NO. GR-0338.000, 6.334 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 6.417 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.894 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.593 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT, IN GRADY COUNTY, OKLAHOMA, Sandy Creek Farms, Inc.; Central Land Consulting LLC; The First National Bank & Trust Co.;**

**and**

**TRACT NO. GR-0340.000, 1.704 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.685 ACRES OF LAND, MORE**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

OR LESS, TEMPORARY WORK SPACE, AND 0.707 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Sandy Creek Farms, Inc.; Central Land Consulting LLC; The First National Bank & Trust Co.;

and

TRACT NO. GR-0340.010, 1.640 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.620 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, IN GRADY COUNTY, OKLAHOMA, Sandy Creek Farms, Inc.; Central Land Consulting LLC; The First National Bank & Trust Co.;

and

TRACT NO. GR-0353.000, 3.177 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.185 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 1.184 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 1.663 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT, IN

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**GRADY COUNTY, OKLAHOMA; Mark A. Morris, as Trustee of the Mark A. Morris Revocable Trust dated March 27, 2012; Marylin Morris, Trustee of the Marylin Morris Revocable Trust dated March 27, 2012; Farm Service Agency; First National Bank of Chickasha; Central Land Consulting LLC;**

**and**

**TRACT NO. GR-0355.000, 1.660 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.660 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.148 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GRADY COUNTY, OKLAHOMA; Shana Marie Elledge and Johnathan Eugene Elledge, Trustees of the Shana & Johnathan Eugene Elledge Family Trust Dated June 27, 2018; Mark Morris; Central Land Consulting LLC;**

**and**

**TRACT NO. CL-KI-0026.000, 3.045 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.047 ACRES OF LAND, MORE OR LESS, TEMPORARY**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

WORK SPACE, AND 0.524 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN KINGFISHER COUNTY, OKLAHOMA; Vincent N. Rother; Central Land Consulting LLC;

and

TRACT NO. CL-KI-0035.000, 2.243 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.237 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.599 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 0.300 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT IN KINGFISHER COUNTY, OKLAHOMA; Karen Schoeling Manuel; Dale Schoeling; Central Land Consulting LLC;

and

TRACT NO. CL-KI-0065.000, 3.015 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.015 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.172 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

WORK SPACE, AND 0.624
ACRES OF LAND, MORE OR
LESS, TEMPORARY ROAD
ACCESS EASEMENT, IN
KINGFISHER COUNTY,
OKLAHOMA; Terry Bruce
Luber, Personal Representative
of the Estate of Willis E. Luber,
deceased, and all heirs and, or
legatees, devisees, trustees,
creditors and assigns of Willis E.
Luber, deceased; Sheryl Lynn
Luber; W. Bruce Luber; Terry
Bruce Luber; Central Land
Consulting LLC;

and

TRACT NO. CL-KI-0066.000,
3.045 ACRES OF LAND, MORE
OR LESS, PERMANENT
EASEMENT (PIPELINE
RIGHT-OF-WAY), 2.972
ACRES OF LAND, MORE OR
LESS, TEMPORARY WORK
SPACE, AND 0.613 ACRES OF
LAND, MORE OR LESS,
ADDITIONAL TEMPORARY
WORK SPACE IN
KINGFISHER COUNTY,
OKLAHOMA; Albert Joseph
Skoch; The Dennis G. and Helen
M. Jones 2015 Revocable Trust
dated the 17th day of March,
2015, Dennis G. Jones and Helen
M. Jones, Co-Trustees; The
Earlene R. Allison Trust Dated
September 11, 2017, a revocable
living trust, Earlene R. Allison,
Trustee; Marilyn Elizabeth
Skoch; Robert Eugene Skoch,
Donald Richard Skoch; Marilyn
Elizabeth Skoch, Trustee of the

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**Marilyn E. Skoch Trust dated June 20, 2018; Central Land Consulting LLC;**

**and**

**TRACT NO. CL-KI-0067.000, 1.508 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.508 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.458 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN KINGFISHER COUNTY, OKLAHOMA, Terry Bruce Luber, Personal Representative of the Estate of Willis E. Luber, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Willis E. Luber, deceased; Central Land Consulting LLC;**

**and**

**TRACT NO. CL-KI-0069.000, 1.986 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.988 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.652 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN KINGFISHER COUNTY, OKLAHOMA;**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

36

**Bradley Charles Krittenbrink; Central Land Consulting LLC;**

**and**

**TRACT NO. CL-KI-0074.000, 2.397 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.476 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.726 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN KINGFISHER COUNTY, OKLAHOMA, Edward Rother; Herman J. Rother; The Equitable Life Assurance Society of the United States; Central Land Consulting LLC;**

**and**

**TRACT NO. CL-KI-0076.000, 3.120 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.120 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.486 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN KINGFISHER COUNTY, OKLAHOMA, Bernita M. Wolf, Trustee of the Bernita M. Wolf Living Trust dated June 21, 2002; Donna M. Coley, Successor Trustee of the Bernita M. Wolf Living Trust dated June 21,**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**2002; Central Land Consulting LLC;**

**and**

**TRACT NO. CL-KI-0077.000, 3.106 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 2.962 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.697 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN KINGFISHER COUNTY, OKLAHOMA, KR&K Inc.; Central Land Consulting LLC;**

**and**

**TRACT NO. CL-KI-0078.000, 0.932 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.721 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.165 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN KINGFISHER COUNTY, OKLAHOMA, Ralph E. Schaefer; Mary Jo Hoffman, Trustee of the Mary Jo Hoffman Revocable Trust dated January 14, 2005; Matthias B. Schaefer and Marla M. Schaefer individually and as Co-Trustees of the Schaefer Family Trust dated April 21, 2006; Barbara M.**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**Schaefer; Central Land Consulting LLC;**

§
§
§
§
§
§

**and**

§
§

**TRACT NO. CL-KI-0079.010, 0.621 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.832 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, IN KINGFISHER COUNTY, OKLAHOMA; Louise Marie Hubbard, Trustee of the Louise Marie Hubbard Living Trust Agreement dated November 11, 1993; Central Land Consulting LLC;**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**and**

§
§

**TRACT NO. CL-KI-0080.000, 1.562 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.562 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.353 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN KINGFISHER COUNTY, OKLAHOMA; Vincent Ray Mueggenborg; Central Land Consulting LLC;**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**and**

§
§

**TRACT NO. CL-KI-0081.000, 3.871 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 3.780 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.984 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN KINGFISHER COUNTY, OKLAHOMA; Dale F Rother and Marian Elizabeth Rother; Central Land Consulting LLC;**

**and**

**TRACT NO. VL-ST-0003.000, 0.843ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.386 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.214 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN STEPHENS COUNTY, OKLAHOMA; Daniel E. McCarley, Trustee of the Daniel E. McCarley Trust, dated May 25, 2007; Douglas Robert Irwin; Jennifer Ann Irwin; Amanda L Irwin; Gina Lynn Lankford; Johnyne Rees; Stephen R. Whitten; Melinda K. Craig, same person as Melinda Kay Whitten, same person as Melinda Kay Whitten Craig; John R. Whitten;**

**and**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**TRACT NO. VL-ST-0018.010, 2.830 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1.488 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.870 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN STEPHENS COUNTY, OKLAHOMA; Norwest Capital Management & Trust Co., Trustee or Successor Trustee of the Revocable Living Trust Agreement dated December 17, 1980, Troy Goodwin, agent; A. P. Goodwin, Jr.; Donald L. Green; E Arline Sims; Imogene A. Lewis; Lucille Sims whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Lucille Sims, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Lucille Sims, deceased; D. Darlene Henricks; E. Arlene Sims; Robert P. Sims, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Robert P. Sims, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Robert P. Sims, deceased; Elizabeth Beeson, Trustee(s) of the James F. Beeson and Elizabeth Beeson Family Trust created January 20, 1992; Kelly J. Egebrecht;**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**Donna A. Hornberger; Donna A. Hornberger; Silas Virgil Goodwin and Sharon Diane Goodwin, as Trustees of the Silas Virgil Goodwin and Sharon Diane Goodwin Revocable Trust, dated July 20, 1998; Charles Dean Goodwin; Wanda Williams, formerly Daily; William Presto Gray; Amaleta Marline Gray; Kenneth Ray Gray; Amaleta Marlina Sharp; Lucille Gray, s/p/a Lucia Gray, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Lucille Gray, s/p/a Lucia Gray, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Lucille Gray, s/p/a Lucia Gray, deceased; David Nunley; Alan Morgan; Donny Morgan; Kevin Morgan; Hettie Mae Ditmore; Cleo C. Holland, Jr.; Clytis Reynolds, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Clytis Reynolds, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Clytis Reynolds, deceased; Pernecie Bocast; Gladys Reusser; Peggy Joe Chadwick, nee Holland; Donna Kay Hornback; Ojuana A. Nichols, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Ojuana A. Nichols, deceased, and all heirs and, or legatees,**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

42

devisees, trustees, creditors and §
assigns of Ojuana A. Nichols, §
deceased; Dianna Olcott now §
McCreight; Rebecca Jean §
Behrendt, whether alive or §
deceased, and, if deceased, the §
executor, executrix and, or §
administrator of the Estate of §
Rebecca Jean Behrendt, §
deceased, and all heirs and, or §
legatees, devisees, trustees, §
creditors and assigns of Rebecca §
Jean Behrendt, deceased; §
Wynema D. Nix, whether alive or §
deceased, and, if deceased, the §
executor, executrix and, or §
administrator of the Estate of §
Wynema D. Nix, deceased, and §
all heirs and, or legatees, §
devisees, trustees, creditors and §
assigns of Wynema D. Nix, §
deceased; Debra D. Nix; Donna §
D. Nix; Richard D. Nix; Billy §
Dwain Ferguson; Danny Ray §
Ferguson; Rory Dale Ferguson; §
Vicki Lynn Ferguson, now §
Fryar,; Mary Jo Bush, a/k/a §
Mary Jo Newman, now Hotchko, §
whether alive or deceased, and, §
if deceased, the executor, §
executrix and, or administrator §
of the Estate of Mary Jo Bush, §
a/k/a Mary Jo Newman, now §
Hotchko, deceased, and all heirs §
and, or legatees, devisees, §
trustees, creditors and assigns of §
Mary Jo Bush, a/k/a Mary Jo §
Newman, now Hotchko, §
deceased; Ray Gene Newman, §
whether alive or deceased, and, §
if deceased, the executor, §
executrix and, or administrator §
of the Estate of Ray Gene §

Newman, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Ray Gene Newman, deceased; Frona Vastal Goodwin, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Frona Vastal Goodwin, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Frona Vastal Goodwin, deceased; Michael Don Goodwin; Judith Carrol Snider;

and

TRACT NO. VL-ST-0024.000, 1.908 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.957 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.318 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN STEPHENS COUNTY, OKLAHOMA; Charles Allen Regan; Robert Edward Regan; Marsha Nan Regan, a.k.a Marsha Nan Regan Purtell; John Patrick Regan; Marcella W. Regan whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Marcella W. Regan, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Marcella W. Regan, deceased; §
Central Land Consulting LLC; §
§
and §
§
§
TRACT NO. VL-ST-0025.000, §
0.863 ACRES OF LAND, MORE §
OR LESS, PERMANENT §
EASEMENT (PIPELINE §
RIGHT-OF-WAY), 0.430 §
ACRES OF LAND, MORE OR §
LESS, TEMPORARY WORK §
SPACE, AND 0.120 ACRES OF §
LAND, MORE OR LESS, §
ADDITIONAL TEMPORARY §
WORK SPACE IN STEPHENS §
COUNTY, OKLAHOMA; §
Charles Allen Regan; Robert §
Edward Regan; Marsha Nan §
Regan, a.k.a Marsha Nan Regan §
Purtell; John Patrick Regan; §
Marcella W. Regan whether §
alive or deceased, and, if §
deceased, the executor, executrix §
and, or administrator of the §
Estate of Marcella W. Regan, §
deceased, and all heirs and, or §
legatees, devisees, trustees, §
creditors and assigns of Marcella §
W. Regan, deceased; Central §
Land Consulting LLC; §
§
and §
§
§
TRACT NO. VL-ST-0026.000, §
2.277 ACRES OF LAND, MORE §
OR LESS, PERMANENT §
EASEMENT (PIPELINE §
RIGHT-OF-WAY), 1.138 §
ACRES OF LAND, MORE OR §
LESS, TEMPORARY WORK §
SPACE, AND 0.188 ACRES OF §
LAND, MORE OR LESS, §

45

ADDITIONAL TEMPORARY WORK SPACE IN STEPHENS COUNTY, OKLAHOMA; Jimmy R. Barker; Marie Robinson whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Marie Robinson, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Marie Robinson, deceased; Jimmy Ray Barker; Jackie Ruth Barker, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Jackie Ruth Barker, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Jackie Ruth Barker, deceased; Suellen Kaye Thiessen; Ronald D. Barker; B.G. Hestand, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of B.G. Hestand, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of B.G. Hestand, deceased; John Hestand, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of John Hestand, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of John Hestand, deceased; Sallie Hestand Rawlinson, whether alive or deceased, and, if deceased, the executor, executrix

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

and, or administrator of the
Estate of Sallie Hestand
Rawlinson, deceased, and all
heirs and, or legatees, devisees,
trustees, creditors and assigns of
Sallie Hestand Rawlinson,
deceased; Cora Hestand Mosby,
whether alive or deceased, and, if
deceased, the executor, executrix
and, or administrator of the
Estate of Cora Hestand Mosby,
deceased, and all heirs and, or
legatees, devisees, trustees,
creditors and assigns of Cora
Hestand Mosby, deceased; Isaac
D. Hestand, whether alive or
deceased, and, if deceased, the
executor, executrix and, or
administrator of the Estate of
Isaac D. Hestand, deceased, and
all heirs and, or legatees,
devisees, trustees, creditors and
assigns of Isaac D. Hestand,
deceased; Ruth Hestand
Pettijohn, whether alive or
deceased, and, if deceased, the
executor, executrix and, or
administrator of the Estate of
Ruth Hestand Pettijohn,
deceased, and all heirs and, or
legatees, devisees, trustees,
creditors and assigns of Ruth
Hestand Pettijohn, deceased;
Arva Hestand Arnold, whether
alive or deceased, and, if
deceased, the executor, executrix
and, or administrator of the
Estate of Arva Hestand Arnold,
deceased, and all heirs and, or
legatees, devisees, trustees,
creditors and assigns of Arva
Hestand Arnold, deceased;

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

and                                              §
                                                 §
TRACT NO. GA-0444.000,                           §
1.659 ACRES OF LAND, MORE                        §
OR LESS, PERMANENT                               §
EASEMENT (PIPELINE                               §
RIGHT-OF-WAY), 1.641                             §
ACRES OF LAND, MORE OR                           §
LESS, TEMPORARY WORK                             §
SPACE, 0.383 ACRES OF                            §
LAND, MORE OR LESS,                              §
ADDITIONAL TEMPORARY                             §
WORK SPACE, AND 0.190                            §
ACRES OF LAND, MORE OR                           §
LESS, TEMPORARY ROAD                             §
ACCESS EASEMENT IN                               §
GARVIN COUNTY,                                   §
OKLAHOMA; Danny T.                               §
Christian; Central Land                          §
Consulting LLC;                                  §
                                                 §
and                                              §
                                                 §
TRACT NO. GA-0445.000,                           §
0.06ACRES OF LAND, MORE                          §
OR LESS, PERMANENT                               §
EASEMENT (PIPELINE                               §
RIGHT-OF-WAY), 0.161                             §
ACRES OF LAND, MORE OR                           §
LESS, TEMPORARY WORK                             §
SPACE, 0.072 ACRES OF                            §
LAND, MORE OR LESS,                              §
ADDITIONAL TEMPORARY                             §
WORK SPACE, AND 0.698                            §
ACRES OF LAND, MORE OR                           §
LESS, TEMPORARY ROAD                             §
ACCESS EASEMENT IN                               §
GARVIN COUNTY,                                   §
OKLAHOMA; Danny T.                               §
Christian; Central Land                          §
Consulting LLC;                                  §
                                                 §
and                                              §

**TRACT NO. GA-0448.000, 1.597 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 1,597 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.424 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE, AND 1.114 ACRES OF LAND, MORE OR LESS, TEMPORARY ROAD ACCESS EASEMENT IN GARVIN COUNTY, OKLAHOMA; Danny T. Christian; Central Land Consulting LLC;**

**and**

**TRACT NO. GA-0450.000, 0.030 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 0.134 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, AND 0.207 ACRES OF LAND, MORE OR LESS, ADDITIONAL TEMPORARY WORK SPACE IN GARVIN COUNTY, OKLAHOMA; Dan Christian, Johnettee Christian; Central Land Consulting LLC;**

**and**

**TRACT NO. GA-0453.000, 1.632 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

RIGHT-OF-WAY), 1.631
ACRES OF LAND, MORE OR
LESS, TEMPORARY WORK
SPACE, AND 0.161 ACRES OF
LAND, MORE OR LESS,
ADDITIONAL TEMPORARY
WORK SPACE IN GARVIN
COUNTY, OKLAHOMA;
A Michael Monroe; C. Patrick
Wallace, whether alive or
deceased, and, if deceased, the
executor, executrix and, or
administrator of the Estate of C.
Patrick Wallace, deceased,
and all heirs and, or legatees,
devisees, trustees, creditors and
assigns of C. Patrick Wallace,
deceased; Jon Kent Curby; Jay
Lynn Perkins; Ken Christian
Perkins; Phillip Lee Perkins;
Dan Christian; Dale P. Cowan;
H. F. Bare, whether alive or
deceased, and, if deceased, the
executor, executrix and, or
administrator of the Estate of H.
F. Bare, deceased, and all heirs
and, or legatees, devisees,
trustees, creditors and assigns of
H. F. Bare, deceased; Lola M.
Bare; Dawn Hull; Christy
Rogers; Misty Bare; Central
Land Consulting LLC;

and

TRACT NO. GA-0469.010,
0.860 ACRES OF LAND,
MORE OR LESS,
TEMPORARY ROAD ACCESS
EASEMENT IN GARVIN
COUNTY, OKLAHOMA;
James A. Clark and Cheri S.
Clark; Cecil Hooks; Chere

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

50

**Hooks; Dorscine S. Littles, as Trustee of The Revocable Trust Agreement of Dorscine S. Littles; The executor, executrix and, or administrator of the Estate of Tams Bixby Spigner, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Tams Bixby Spigner, deceased; L.K. Spigner, Jr.; Evelyn Edwards, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Evelyn Edwards, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Evelyn Edwards, deceased; Alvin Moton Spigner; The executrix and, or administrator of the Estate of Theresa Spigner "Potts Bonner, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Theresa Spigner "Potts" Bonner, deceased; Jessie Davis; Theresa Caldwell a/k/a Theresa Foreman; Itasca Renee' Banks a/k/a Renee'; Clezell Foreman; Denise McGee a/k/a Denese Foreman; Althea Foreman; Kenneth Wright; Catherine Walker a/k/a Catherine Wright; Zachary Wright; Zoe Wright a/k/a Zoelea Wright a/k/a Zoe Lea Wright; Jerome Wright, II; The executrix and, or administrator of the Estate of Nathan A. Spigner, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Nathan A. Spigner,**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

51

**deceased; Margaret Spigner Hudson; The executrix and, or administrator of the Estate of Bob Shirey, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Bob Shirey, deceased; Gregory Rick Shirey; Sheree R. Burkett; Dorothy Sue Riley, s/p/a Dorothy Hudson;**

**and**

**Any Heirs, Successors and Assigns of the Above-Named Defendants,**

**and**

**Any Unknown Owners of the Above-Named Tracts,**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

*Defendants.*   §

## SECOND AMENDED VERIFIED COMPLAINT FOR CONDEMNATION

Plaintiff Midship Pipeline Company, LLC ("Plaintiff" or "Midship"), by and through counsel, files this Second Amended Verified Complaint for Condemnation ("Verified Complaint") pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h) and Federal Rule of Civil Procedure 71.1, which provides, in part, that the plaintiff may -- as often as it wants -- amend the complaint without leave of court at any time before the trial compensation.  Fed. R. Civ. P. 71.1(f). Midship seeks an order of condemnation for the permanent pipeline, temporary work space, surface site, permanent and temporary road access and other rights-of-way and easements

(the "Easements" as hereinafter defined), which are described below and identified, described and depicted on **Exhibit 1** (collectively, **Exhibit 1**) attached hereto and incorporated herein, and for such other legal and equitable relief as may be appropriate, specifically including injunctive relief allowing Midship to immediately enter the property to conduct necessary surveys and clear the Easements and commence and complete construction and restoration efforts and operate and maintain the pipeline described in paragraph 1 below while the proper amount of compensation for the taking is resolved in this action.

### Jurisdiction, Venue, and Authority for Taking

1.      Midship is the holder of a Certificate of Public Convenience and Necessity ("Certificate") issued on August 13, 2018, by the Federal Energy Regulatory Commission ("FERC"), under Docket Nos. CP17-458-00, a true and correct copy of which is attached hereto as **Exhibit 2** and incorporated herein, to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and, or abandon in place approximately 199.6 miles of new 36-inch-diameter natural gas pipeline in Kingfisher, Canadian, Grady, Garvin, Stephens, Carter, Johnston, and Bryan Counties, Oklahoma, 20.4 miles of new 30-inch-diameter pipeline lateral in Kingfisher County, Oklahoma, 13.6 miles of new 16-inch-diameter pipeline lateral in Stephens, Carter, and Garvin Counties, Oklahoma, three (3) compressor stations, a booster station, and accompanying facilities to provide firm transportation capacity from the South Central Oklahoma Oil Province ("SCOOP") and the Sooner Trend Anadarko Basin Canadian and

Kingfisher ("STACK") play in the Anadarko Basin in Oklahoma to existing natural gas pipelines near Bennington, Oklahoma for transport to growing Gulf Coast and Southeast markets (the Midcontinent Supply Header Interstate Pipeline Project, hereinafter, the "MIDSHIP Project" or "Project"). *See* Exhibit 2 at pp. 2-5.  The MIDSHIP Project will provide up to 1,440 MMcf/d of new firm transportation capacity to create a critical link between increasing production in the STACK and SCOOP plays in the Anadarko and growing Gulf Coast and Southeast markets, and represents an approximate $1.0 billion capital investment of private funds for public infrastructure under the NGA.  *See* Exhibit 2 pp. 1, 12.

2.     This is a civil action for the taking of property interests under the power of eminent domain and for the determination and award of just compensation to the Surface Owners and Other Parties-in-Interest as identified on **Exhibit 1**.  The authority for the taking is 15 U.S.C. § 717f(h), which grants federal jurisdiction. Additionally, jurisdiction exists under 28 U.S.C. §1331, because this action arises under the laws of the United States, and under 28 U.S.C. § 1337, because this action arises under an Act of Congress regulating interstate commerce.

3.     Pursuant to 15 U.S.C. § 717f(h), the compensation demanded or claimed by the owner or owners of each tract to be burdened by the Easements on, over, across and, or under each such tract exceeds $3,000.00, as does the amount offered by Midship for such Easements.

4.      Midship has not been able to acquire by contract, and, or is unable to agree as to the amount of compensation to be paid for the Easements that will burden the lands owned by the Defendants (as hereinafter defined).

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the properties that are the subject of this action are situated within this judicial district, and it is proper to join all of the properties identified on **Exhibits 1-1.5** in this action and to join all of the Defendants.

## Parties

6.      Midship is a natural gas company as defined by Section 2(a) of the Natural Gas Act, 15 U.S.C. § 717(a)(6). Midship is a Delaware limited liability company with a principal place of business at 700 Milam Street, Houston, Texas, 77002.  It is registered to do business in, and is engaged in business in the State of Oklahoma and within this federal district.

7.      Midship is a company organized for the purpose, among other things, of transporting natural gas in interstate commerce through pipes and conduits, and is an interstate natural gas company within the meaning of the Natural Gas Act, 15 U.S.C. §§ 717a(6) and (1), and as such, is qualified to construct, install, own, operate and maintain pipelines for the transmission of natural gas in interstate commerce.

8.      Pursuant to the Certificate, the FERC has determined that the MIDSHIP Project will:

> Midship has entered into long-term precedent agreements with four customers for a total of 925 MMcf per day of firm transportation capacity – about 64 percent of the system's capacity. This is a substantial

demonstration of market demand, both in general and in the context of the total design capacity of the MIDSHIP Project. Moreover, Midship has no existing customers from whom it could recover any of the costs associated with the unsubscribed capacity. Additionally, Midship's recourse rates will be based on the design capacity of the constructed pipeline. These factors operate to place all risk for any unsubscribed capacity solely upon Midship, assuring the Commission that the project will not go forward unless it is financially viable. Under these circumstances, Midship has sufficiently demonstrated a need for the project. . . .  Midship's proposed project will serve a demonstrated demand for the transportation of natural gas. Based on the benefits the project will provide and the minimal adverse impacts on existing shippers, other pipelines and their captive customers, and landowners and surrounding communities, we find, consistent with the Certificate Policy Statement and NGA section 7(c), that the public convenience and necessity requires approval of the project, subject to the environmental and other conditions in this order.

Exhibit 2 at pp. 7-8, 31.

9.     The Easements sought herein are needed by Midship to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and, or abandon in place the pipeline facilities for the transportation of natural gas in interstate commerce and to fulfill the public purposes for which the Certificate was issued.  *See* Exhibit 2 at pp. 7, 25, 35.

10.     The persons and, or entities known or whose names could be ascertained by a reasonably diligent search of the records as owning or claiming any interest in the tract or tracts on, over, across and, or under which the Easements are to be situated as identified, depicted or described on Exhibits 1-1.5 and the tracts (the "Parent Tracts"), are collectively referred to herein as "Defendants."

11.     There may be others who have or may claim some interest in the Parent Tracts, whose names could not be ascertained by a reasonably diligent search of the records. These persons and/or entities are made parties to this action under the designation of "Unknown Owners" pursuant to Federal Rule of Civil Procedure 71.1(c)(3).

12.     The amount of the property sought for such Easements, as well as the location of all Easements sought to be condemned in this action are within the scope of the Certificate and are necessary for the operation of the MIDSHIP Project. A map depicting the MIDSHIP Project's overall approved route is attached hereto as Exhibit 3.

13.     Midship has voluntarily acquired the majority of the Easements necessary for the MIDSHIP Project, and has negotiated with the Surface Owners in an attempt to purchase amicably the Easements on, over, across and under the Parent Tracts and has negotiated with Other Parties-in-Interest to accommodate pre-existing rights within the lands to be traversed by the Easements and, or existing facilities crossed by the Easements, all as necessary to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and, or abandon in place the MIDSHIP Project pipeline facilities, but has not been able to reach an agreement in this regard.  Furthermore, Midship has made written offers to the affected Surface Owners for the Easements sought to be acquired before instituting this action, but such offers have been rejected, or such affected Surface Owners have failed to respond, thereby preventing negotiations.

14.     Therefore, it is necessary for Midship to exercise its right of eminent domain under Section 717f(h) of the Natural Gas Act, 15 U.S.C. §717f(h), to acquire the needed Easements for the MIDSHIP Project.

**The MIDSHIP Project**

15.     The MIDSHIP Project will provide up to  1,440 MMcf/d of new firm transportation capacity to meet the demands of gas producers and, or shippers.

16.     The MIDSHIP Project represents an approximate $1.0 billion investment in energy infrastructure in the United States.

17.     Pursuant to the Certificate, Midship must complete the authorized construction of the proposed facilities and make them available for service within by the In-Service Date specified in the Certificate, and much sooner to meet the needs and requitements of its shippers.

18.     Midship has entered into binding Precedent Service Agreements with shippers for long-term firm transportation service for over sixty-four percent (64%) of the 1,440 MMcf/d of the Midship Project's design capacity.  *See* Exhibit 2, p. 4. In order to satisfy the requirements of the precedent agreements, Midship must expeditiously commence construction of the Project so that the lines can be timely placed in service to meet the needs and requirements of shippers and the shippers' receiving customers.

19.     The proposed construction schedule and the FERC and contractual In-Service Dates for the MIDSHIP Project are driven by the public need for providing a means of transporting large volumes of natural gas to market.

20.     The MIDSHIP Project is a complex project that involves numerous stakeholders, including gas producers and shippers, landowners, environmental and public interest groups, Native American tribes, consumers, as well as numerous governmental agencies, including FERC, the U.S. Environmental Protection Agency (EPA), the U.S. Army Corps of Engineers (COE), the U.S. Fish and Wildlife Service (USFWS), Oklahoma Department of Environmental Quality (ODEQ) and Native American tribes.

21.     Per the Certificate, the construction of the Midship Project must comply with applicable environmental permits, approvals and regulations.  *See* Exhibit 2, Certificate, at pp. 34-41.  As part of the Certificate issuance process, a Final  Environmental Impact Statement ("FEIS") was issued by the FERC, which assessed the potential environmental effects of the construction and operation of the MIDSHIP Project, and concluded that the MIDSHIP Project, when constructed and operated in accordance with applicable laws and regulations, and the mitigating measures discussed in the FEIS and the FERC's recommendations therein, the MIDSHIP Project will have less-than-significant levels of adverse impacts. *See e.g.*, FEIS at 5-1. FEIS findings are enclosed as Exhibits 4-4.10 (collecitevely, Exhibit 4) and are incorporated herein.  In the Certificate, FERC concluded:

[W]e agree with the conclusions presented in the final EIS and find that the project, if constructed and operated as described in the final EIS, is an environmentally acceptable action. Further, for the reasons discussed throughout the order, as stated above, we find that the project is in the public convenience and necessity.

*See* Exhibit 2 at p. 31.

22.     Per the FEIS and the Certificate, to reduce impacts, if any, Midship must finalize all surveys (including without limitation, lineal, cultural, soil, species, karst, noise, wetland, and water well, ground water, and, or spring, surveys inspections and, or sampling).  If Midship is not granted immediate access to the properties at issue, it will be unable to complete the necessary and required pre-construction surveys, and to timely proceed with construction upon issuance by FERC of a notice to proceed, and it will not be able to place the Project in-service by the contractual in-service dates as expected by Midship's shippers and their customers and FERC.

23.     The construction schedule for the MIDSHIP Project is constricted and involves a complex logistical effort that will require the careful coordination of multiple crews of up to 1,338 construction workers performing various stages of work in an assembly-like fashion along the construction corridor of approximately 234 miles at a rate (distance per day) that is affected by topography, road, water bodies and other factors.

24.     To meet all of its shippers' needs and those of its shippers' customers, while at the same time complying with applicable regulations and Midship's

obligations as set forth in the Certificate, Midship must begin various surveys and other pre-construction and then construction immediately upon receipt of a notice to proceed.

25.     Timing is of the essence, and maintaining the project schedule is critical, as any delay in commencing and completing construction of the MIDSHIP Project will likely prevent Midship from meeting the needs and requirements of its shippers and its shippers' receiving customers, while at the same time complying with its FERC obligations under the Certificate.

### Count One: Condemnation of Property Interests to Be Acquired and Property Use

26.     The interests to be acquired by Midship are non-exclusive perpetual fifty feet (50') wide permanent pipeline rights-of-way and easements (the "Permanent Pipeline Easements") as same are identified, described and depicted on **Exhibit 1** hereto, to survey (including without limitation, lineal, cultural, soil, species, karst, noise, wetland, and water well, ground water, and, or spring, surveys inspections and, or sampling), construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and, or abandon in place one pipeline in the fifty feet (50') wide permanent easements more fully identified, described and depicted on Exhibits 1-1.5 hereto, said pipeline sections as described above being not to exceed 36 inches in nominal diameter (the "Pipeline or "Pipelines"), as set forth on Exhibits 1-1.5, and located within such Permanent Pipeline Easements, together with such below ground valves (unless a surface site

easement is sought, in which case, Midship seeks to have the right to place both the valve and other equipment and facilities above and below ground described below), and below ground fittings, and below ground wires, cables, and other equipment and appurtenances, and above ground cathodic protection test leads and control devices, Tru Tracker or equivalent wires, and pipeline markers, as may be necessary or convenient for construction, operation and maintenance of the Pipeline (collectively, along with the equipment, facilities and devices to be located on surface site easements described below, the "Facilities"), under, upon, across, and through the Parent Tracts as identified, described and depicted on **Exhibit 1.**

27.     Midship also seeks to condemn non-exclusive temporary workspaces and additional temporary workspaces identified, described and depicted on **Exhibit 1** hereto (collectively, the "Temporary Workspace Easements").   Each of the foregoing Temporary Workspace Easements shall be used by Midship solely for the initial construction of the Project in the Permanent Pipeline Easements and Surface Site Easements and for the restoration and remediation of the land after initial construction and shall expire upon completion of the initial construction and restoration and remediation or upon the expiration of twenty-four months from the commencement of construction in the county in which the Temporary Workspace Easement at issue is located, whichever occurs first. Thereafter, all of Midship's privileges and rights on or to use of the Temporary Workspace Easements shall terminate.

28.     Midship also seeks to condemn exclusive perpetual permanent surface easements, including but not limited to T-Tap Surface Site, Main Line Valve Site (collectively, the "Surface Site Easements") to be used solely for the Pipeline for the purpose of constructing, maintaining, operating, removing, changing the size of, relocating, replacing, protecting and repairing both surface and subsurface pipelines, pumps, launching-receiving equipment, flares, communication equipment, generators, dehydrators, separators, valves, risers, electrical equipment (including but not limited to MCC Buildings/transformers/substations), electrical lines, wires, cables, meters, meter houses, meter runs, buildings and any and all other devices, equipment and structures incident or necessary to the regulation, control, measurement, treatment, transportation and distribution of natural gas, to the extent identified, described and depicted on Exhibits 1-1.5 hereto, together with the right to enclose said easements by fences and the further right, at the expiration of the use of said easements for one or more of such purposes, to retain possession and control of said property for a reasonable period of time thereafter within which to remove said pipelines and all other properties of whatever character or description placed or constructed by Midship upon said easements.  Midship shall have no right to place any compressors on the Surface Site Easements unless specifically identified on plats attached hereto.   Midship, at its option, shall erect and maintain around, but within the Surface Site Easements, a wooden or chain link fence, trees, or shrubbery and flowers.

29.     Midship also seeks to condemn non-exclusive (1) permanent road access easements ("Permanent Road Access Easements"), and (2) during the initial construction of the Pipeline or Pipelines only, temporary road access easements ("Temporary Road Access Easements"), to the extent identified, described and depicted on **Exhibit 1,** to be used by Midship solely for the purpose of ingress and egress to and from public roads and other easements to which Midship has the right of access to and from the Permanent Pipeline Easements, the Temporary Workspace Easements and the Surface Site Easements.  The Temporary Access Easements shall expire upon completion of the initial construction and restoration or the expiration of twenty-four months from the commencement of construction in the county in which the Temporary Road Access Easement as issue is located, whichever occurs first.  Midship shall not prevent the owner of the lands burdened with the Permanent Road Access Easements and, or the Temporary Road Access Easements from utilizing the roadways within such Easements.  With respect to the Temporary Road Access Easements, Midship will, prior to termination of same, restore the roadways located within such easements to the same or better condition that existed immediately prior to Midship's use thereof, to the extent reasonably practicable. With respect to the Temporary Road Access Easements (while same are in effect) and the Permanent Road Access Easements, Midship shall have the right to use, repair, improve and, or maintain any existing roads located therein and, or to construct, use, repair, improve, place and, or maintain thereon new roadways, including ditches, culverts, drains and such other appurtenant facilities, and, within

the Permanent Road Access Easements, construct, install, maintain and replace poles, wires and cables as are necessary to provide electricity and, or communication capabilities to the Pipeline or Pipelines and valves and, or other facilities located on the Surface Site Easements, and Midship shall maintain and upkeep to a reasonable state of repair any roads it uses which are currently situated on or constructed on the Permanent Road Access Easements. The Permanent Pipeline Easements, Temporary Workspace Easements, Surface Site Easements, Permanent Road Access Easements, and Temporary Road Access Easements are collectively referred to as the "Easements."

30.     In no event is Midship seeking to condemn any rights not authorized by FERC as reflected in the Certificate.

31.     The right to use the Easements shall belong to Midship and its agents, employees, designees, contractors, guests, invitees, successors and assigns, and all those acting by or on behalf of it for the above stated purposes.  Midship seeks the right of ingress and egress over, across and through the Permanent Pipeline Easements, the Temporary Workspace Easements (while they remain in effect), the Surface Site Easements, the Temporary Road Access Easements (while they remain in effect), and the Permanent Road Access Easements, and to access same from other rights-of-way or easements and roads, to which Midship has the right of access, for the above stated purposes and for all other purposes necessary and at all times convenient and necessary to exercise the rights granted by the Certificate as applied and enforced by this Court.

32.     No pipeline or Facilities of a permanent nature of any kind or character shall be constructed by Midship on the Temporary Work Space Easements or the Temporary Road Access Easements.

33.     Pursuant to the Easements sought herein, Midship shall have the right to construct, maintain and change slopes of cuts and fills to ensure proper lateral and subjacent support and for drainage for the Facilities, and shall have the right to remove trees, brush, crops and other vegetation and obstructions from the Permanent Pipeline Easements, Surface Site Easements, Permanent Road Access Easements, and Temporary Workspace Easements and Temporary Road Access Easements (while they remain in effect).

34.     Pursuant to the Easements sought herein, Midship shall have the right to install, maintain and use gates in all fences which now cross or may cross the Permanent Pipeline Easements or which provide access to the Parent Tracts where the Easements intersect same; and Midship shall have the right to install its own lock, if Midship so chooses, and Midship and the owners of the Parent Tracts shall have access (i.e., interlocking locks) through such gates. Midship and its designated contractors, employees and invitees shall keep all gates in fences closed at all times, except when passing through same, so that cattle, horses and/or other livestock located on the Parent Tracts cannot stray from fenced pastures. Midship shall have no right to fence or enclose the Permanent Pipeline Easements, but shall have the right to fence the Surface Site Easements.   Midship shall, during the initial

construction operations, maintain suitable crossings on, over, and across the Permanent Pipeline Easements.

35.    If any of the lands within the Easements are subject to valid and subsisting oil and gas leases, coal leases, surface leases, pipeline easements or easements for other purposes, Midship's Easement rights acquired hereunder from and against the owners of such leases and or, easements, are (i) acquired only to extent necessary to carry out the rights granted to Midship under the Easements sought, and (ii) to be exercised by Midship so as to not unreasonably interfere with existing rights of such owners; provided, however, that Midship shall be entitled in all events to use the Easements to carry out the purposes approved by the FERC in the Certificate.  Midship has named such owners as Defendants to the extent they claim some interest in the lands burdened by the Easements sought by Midship. Defendants who own any interest in a valid and existing lease and, or an easement may use lands lying within the Permanent Pipeline Easements and Permanent Road Access Easements for the uses authorized under the applicable lease and, or easement, provided such uses do not destroy or unreasonably interfere with Midship's permitted uses.   As to all remaining Defendants, such Defendants (i) may use lands lying within the Permanent Pipeline Easements and Permanent Road Access Easements for all purposes which do not destroy or interfere with Midship's permitted uses of same, including, without limitation, agricultural, open space, setback, density, street, utility and roadway purposes, (ii) after review and approval by Midship, which will not be unreasonably withheld, may construct and install any

and all streets and roadways and sidewalks, at any angle of not less than forty-five degrees (45°) to Midship's Facilities, across the Permanent Pipeline Easements which do not interfere with, damage, destroy or alter the operation of the Facilities, (iii) may construct and/or install water, sewer, gas, electric, cable TV, telephone and, or other utility lines across the Permanent Pipeline Easements at any angle of not less than forty-five degrees (45°) to Midship's Facilities, across the Permanent Pipeline Easements which do not interfere with, damage, destroy or alter the operation of the Facilities, and provided that all of Midship's required and applicable spacings, including depth separation limits and other protective requirements are met, and (iv) may construct and/or install water, sewer, gas, electric, cable TV, telephone or other utility lines across the Permanent Road Access Easements so long as such construction, installation and maintenance of same does not unreasonably interfere with Midship's use of same, or damage or destroy the roads located within such easements.

36.     The use of the lands within the Easements shall be regulated by all appropriate and then applicable ordinances, regulations, resolutions or laws of any governmental entity having authority over same.  Defendants must notify Midship in writing before the construction or installation of any streets, roadways, utilities or other encroachments on, over, across or under the Permanent Pipeline Easements and, or on, over, across or under the Permanent Road Access Easements.

37.     Defendants may not use any part of the Permanent Pipeline Easements and, or the Permanent Road Access Easements if such use may damage, destroy,

injure, and/or interfere with the Midship's use of same for the permitted uses hereunder. Defendants, except for those Defendants who have rights to do so under valid and subsisting leases and, or easements, are not permitted to conduct any of the following activities on the Permanent Pipeline Easements and, or the Permanent Road Access Easements without the prior written permission from Midship: (i) construct any temporary or permanent building or site improvements, other than streets and roads as provided above; (ii) drill or operate any well; (iii) remove soil or change the grade or slope; (iv) impound surface water; or (v) plant trees or landscaping.  Notwithstanding anything herein to the contrary, no above or below ground obstruction that may destroy or materially interfere with Midship's permitted uses shall be placed, erected, installed or permitted within or upon the Permanent Pipeline Easements and, or the Permanent Road Access Easements without the prior written permission of Midship.  In the event the terms of this paragraph are violated, Midship shall have the immediate right to correct or eliminate such violation at the sole expense of party who caused the violation.  The provisions of this paragraph shall not apply to the Surface Site Easements as they are being condemned for Midship's exclusive use.

38.     Midship has the right from time to time on the Permanent Pipeline Easements, Surface Site Easements, and, or the Permanent Road Access Easements to trim, cut down or eliminate trees or shrubbery as may be necessary to prevent possible interference with the operation of the Facilities and to remove possible hazards thereto, and, except as provided above, the right to remove or prevent the

construction of any and all buildings, structures, reservoirs or other obstructions on the Permanent Pipeline Easements and, or the Permanent Road Access Easements that, in the sole judgment of Midship, may endanger or interfere with the efficiency, safety, or convenient operation of the Facilities. From and after the completion of initial construction, Midship shall pay any verifiable damages that may arise to growing crops, timber, fences and other improvements from the construction, maintenance and operation of the Facilities, provided that Midship shall not be responsible for paying damages for its removal of any trees or brush (but not growing crops) or other obstructions from the Permanent Pipeline Easements or for its removal of any trees or brush or other obstructions from the Surface Site Easements and, or the Permanent Road Access Easements as part of its routine operations to maintain thereof free from obstructions.  Midship shall maintain the Permanent Pipeline Easements, Surface Site Easements, Permanent Road Access Easements, and the Temporary Workspace Easements (while same remain in effect) and Temporary Road Access Easements (while same remain in effect) clear of all litter and trash accumulations.

39.    Midship does not seek to acquire any royalty, working, revenue, overriding, or other oil, gas, or mineral interests.  Defendants shall, to the extent owned by Defendants, retain all the oil, gas, and other minerals in, on and under the Parent Tracts, including within the Easements; provided, however, Defendants shall not be permitted to drill or operate equipment for the production or development of oil, gas, and minerals within or on the Permanent Pipeline Easements, Surface Site

Easements and, or the Permanent Road Access Easements, but Defendants shall be permitted to extract the oil, gas and minerals from and under same by directional drilling and other means, so long as such activities do not damage, destroy, injure, and/or interfere with the Midship's use, operation and maintenance of the Facilities or Midship's use of said easements for the purposes for which same are sought by Midship.

40.     Upon completion of construction, permanent fencing and tiling destroyed or disturbed by project construction activities shall be repaired and, or re-installed by Midship, at its sole expense, along substantially the same alignment, configuration and approximate location of the Defendants' existing fences and tiling system.

41.     Midship shall comply in all respects, at its sole cost, with all federal, laws, rules, and regulations which are applicable to Midship's activities hereunder, and all state and local laws, rules, and regulations which are applicable to Midship's activities hereunder (to the extent they are not pre-empted or inconsistent with federal laws, rules, and regulations).

42.     Midship shall have the right to adequately mark the Pipeline with permanent line markers, ground placards and install and maintain cathodic test leads in order to promote public safety and the future safe operation of said pipeline, and to meet applicable governmental regulations.

43.     Notwithstanding anything to the contrary herein, Midship (except for facilities on Surface Site Easements, electric poles on Permanent Road Access

Easements and pipeline markers, and cathodic test leads on Permanent Pipeline Easements, which will be placed within the Permanent Pipeline Easements at road crossings, property boundaries or existing fence lines intersected by the Pipeline, unless required by applicable regulations to be placed at other locations within the Permanent Pipeline Easements, and pipeline vents which will be placed within the Permanent Pipeline Easements at road crossings, where required), and Tru Tracker or equivalent wires, will not, unless specifically described and depicted on the **Exhibit 1** hereto, construct, build, install, maintain or have any above ground structures, installations, equipment or apparatus of any kind on or within the boundaries of the Permanent Pipeline Easements or Permanent Road Access Easements.

44.     Midship hereby agrees to indemnify and hold Defendants harmless from and against any claim or liability or loss from personal injury, property damage resulting from or arising out of the use by Midship, its contractors, servants, agents or invitees, of the Easements, excepting, however, any and all claims, liabilities or damages as may be due to or caused by the acts of a Defendant, or his, her or its servants, agents or invitees.

45.     Midship shall have the right to assign its Easements to the extent allowed by applicable law, and the rights granted hereunder while in effect, may be assigned in whole or in part, to one or more assignees. The Permanent Pipeline Easements, Surface Site Easements, and the Permanent Road Access Easements sought hereunder shall be in perpetuity, and the easement provisions of this Verified

Complaint, including all benefits and burdens, shall be covenants running with the land and shall be binding on Midship, Defendants, and their respective successors and assigns.

46.     It is in the public interest and necessity, as evidenced by the Certificate, that the Easements, as certificated by FERC and described herein and in **Exhibit 1,** be condemned for the public purposes herein described.

47.     The intended uses of the Easements to be taken are within the authority conferred by the Certificate.

48.     Pursuant to Fed. R. Civ. P. 65(c), Midship will deposit into the Court's registry the amount required by the Court to secure Defendants compensation that will ultimately be awarded for the Easements sought, and subject to the withdrawal by Defendants on terms specified by this Court.

## Count Two: Declaratory Relief

49.     Midship incorporates by reference paragraphs 1 through 48.

50.     Midship requests the Court to declare, pursuant to 28 U.S.C. § 2201, and the Certificate issued by FERC, pursuant to the Natural Gas Act, that Midship has the substantive right to exercise eminent domain over and condemn the Easements as outlined in this Verified Complaint and in the Certificate.

## Count Three: Injunctive Relief

51.     Midship incorporates by reference paragraphs 1 through 50.

52.     Midship seeks an order granting it immediate entry upon the Easements identified herein.

53.     Immediate access and entry is necessary so that Midship can timely place the MIDSHIP Project in service and to oprate and maintain the MIDSHIP Project pending determination of just compensation, to meet the needs of Midship's shippers and their customers, while at the same time complying with the applicable regulations and Midship's obligations set forth in the Certificate. If Midship does not obtain immediate access and entry to the Easements it will be unable to timely place the MIDSHIP Project in service to meet the in service dates required by its shippers and to meet the needs of the public, and will suffer immediate and irreparible harm for which it has no adequate remedy.

54.     Midship will, upon Court order, post the required security reflective of the total estimate of just compensation due to Defendants for the acquisition of the Easements.  As a result, Defendants will not be harmed in any way.

55.     Midship has the right to condemn the Easements pursuant to the Certificate issued pursuant to the Natural Gas Act and, therefore, Midship is substantially likely to prevail on the merits of the taking.

56.     The Certificate establishes that the MIDSHIP Project and acquisition of the Easements is in the public interest.

57.     Accordingly, Midship requests the Court to enter an order granting injunctive relief to permit Midship the right of immediate entry and access upon the Easements to commence and complete construction of the MIDSHIP Project and to

operate and maintain the MIDSHIP Project pending determination of just compoensation.

## Civil Rule 71.1(d) Notices

58.    Pursuant to Fed. R. Civ. P. 71.1(d)(1), Midship is hereby delivering to the clerk the requisite notices to the Defendants named herein, as identified in **Exhibits 1**.

WHEREFORE, Midship respectfully prays that this Honorable Court:

a.    Deem the Notice submitted herewith pursuant to Federal Rule of Civil Procedure 71.1(d) to be good and sufficient;

b.    Order that said Notice be served on the Defendants in a manner set forth by Federal Rule of Civil Procedure 71.1(d)(3);

c.    Recognize and declare Midship's substantative right to appropriate, through eminent domain, the Easements;

d.    Enter an order granting Midship immediate entry onto the Easements identified and described herein prior to the determination of just compensation upon the posting of the security required by the Court to begin pre-construction activities and construction of the Facilities upon receipt of the notice to proceed, and operation and maintenance thereof while the issue of just compensation for the taking is resolved in this Court;

e.    Appoint a commission for the determination of just compensation on

the takings pursuant to Fed. R. Civ. P. 71.1(h)(2);

    a.  Enter judgment and order(s) of taking in favor of Midship, condemning and vesting in Midship the Easements identified and described herein; and

    b.  Issue all necessary and/or appropriate orders and decrees, and for all other general, equitable and legal relief as the Court deems just and proper.

Respectfully submitted this 14th day of March, 2019.

                  */s/ Thomas Zabel*
                  ZABEL FREEMAN
                  Thomas A. Zabel (Attorney in charge)
                  Texas Bar No. 22235500
                  tzabel@zflawfirm.com
                  Scott Seidl, OBA No. 30426
                  sseidl@zflawfirm.com
                  Vadim O. Bourenin
                  Texas Bar No. 24076284
                  vbourenin@zflawfirm.com
                  1135 Heights Boulevard,
                  Houston, TX 77008
                  713-802-9117 (telephone)
                  713-802-9114 (facsimile)

                        and

                  WILLIAMS, BOX, FORSHEE &
                  BULLARD, PC
                  David M. Box, OBA #21943
                  Mason J. Schwartz, OBA #32864
                   522 Colcord Drive
                  Oklahoma City, OK 73102-2202
                  ( 405) 232-0080

(405) 236-5814 Fax
box@wbfblaw.com
dmbox@wbfblaw.com

and

HALL, ESTILL, HARDWICK,
GABLE, GOLDEN & NELSON,
P.C.
Mark Banner, OBA #13243
320 North Boston, Suite 200
Tulsa, OK 74103-3706
Telephone:  (918) 594-0432
Facsimile:  (918) 594-0505
Email:  mbanner@hallestill.com

**Attorneys for Plaintiff,**
**Midship Pipeline Company,LLC**

## VERIFICATION

STATE OF TEXAS      :

                         :     SS

COUNTY OF HARRIS    :

I, Jim Privett, after being duly sworn, depose and state:

1. I am the Vice-President, Project Management Pipelines, for the Midship Pipeline Company, LLC ("Midship") on the MIDSHIP Project.

2. I am the person responsible for supervising Midship's efforts to acquire the Easements and other interests needed for the MIDSHIP Project and overseeing overall construction of the MIDSHIP Project.

3. I am authorized and qualified to make this verification on behalf of Midship based on my personal knowledge of the factual matters set forth in the above Verified Complaint.

4. I have read the foregoing Verified Complaint and am familiar with its contents.

5. The statements of fact contained in the Verified Complaint are within my personal knowledge and are true and accurate.

By: _____

Jim Privett

Sworn to and subscribed before me this 18th day of January, 2019.

_____

Notary Public in and for the State of Texas



JESSICA ELIZABETH HANN
Notary ID #131088687
My Commission Expires
April 13, 2021