IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIDSHIP PIPELINE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> TRACT NO. CN-0004.000, 1.504 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT IN CANADIAN COUNTY, OKLAHOMA, *et al.*, <br><br> Defendants. | Case No.: CIV-18-858-G |

**DEFENDANTS CHUCK'S RIG REPAIR, LLC'S, CENTRAL LAND CONSULTING'S AND CHARLES WHITE'S OBJECTION AND RESPONSE TO MOTION FOR CONTEMPT [DKT. 642]**

Defendants Chuck's Rig Repair, LLC, Central Land Consulting and Charles White (hereinafter "Respondents") object and respond to plaintiff Midship Pipeline Company, LLC's Motion for Contempt (the "Motion") [Dkt. 642].

**RESPONSE BRIEF**

**PROPOSITION I:**   **THERE IS NO ORDER THE TERMS OF WHICH RESPONDENTS VIOLATED**.

Midship contends that Respondents violated the terms of the Court's mandatory injunction granting it immediate possession of certain easements, including those on the property of Chuck's Rig Repair, LLC. (Motion at ¶ 5)[Dkt. 462].

The Tenth Circuit has repeatedly held that "To prevail in a civil contempt proceeding, the movant must prove, by clear and convincing evidence, (1) that a valid court

1

order existed, (2) that the opposing party had knowledge of the order, and (3) that party disobeyed the order." *Reliance Ins. Co. v. Mast Constr.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

The terms of that order, which the contemnor complains that the contemnee violated, must be <u>clear and specific</u>. *See In re Lucre Mgmt. Group, LLC*, 365 F.3d 874, 875 (10th Cir. 2004)("To be held in contempt, 'a court must find the party violated a specific and definite court order and the party had notice of the order.'"). As the Tenth Circuit made clear in *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370-71 (10th Cir. 1996)("Rule 65(d) provides in part: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." (Emphasis added.) The rule is phrased in mandatory language. "[It] expressly proscribes the issuance of an injunction which describes the enjoined conduct by referring to another document." *Thomas v. Brock*, 810 F.2d 448, 450 (4th Cir.1987). <u>The proscription protects those who are enjoined by informing them of the specific conduct regulated by the injunction and subject to contempt</u>. See 11A Federal Practice and Procedure Charles A. Wright, Arthur R. Miller & Mary Kay Kane § 2955, at 310.)[emphasis added]").

The only order relied upon by Midship is the Court's February 6, 2019 Order, which *granted Midship request for a mandatory injunction conveying immediate possession of the requested easements upon Midship prior to a trial on just compensation*. [Dkt. 613]. The order contained no prohibitory command directed to respondents describing "in

resasonable detail . . . the act or acts sought to be restrained." It simply granted Midship the only injunctive relief it actually sought – mandatory injunctive relief granting immediate possession of the easements prior to a trial on just compensation. *See Order* a 10 ("Midship is awarded immediate possession of the Easements to enable commencement of on-site preconstruction- and construction-related activities and to operate and maintain the Pipeline pending final determination of just compensation").

In short, the Court granted Midship the only relief Midship it requested. *See* Midship's Proposed Order at ¶ 2 [Dkt. 61-4] ("That Midship is awarded injunctive relief permitting it, upon posting the security described below, the immediate right of entry and access to the Defendant Properties to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with the same or lesser size pipe, remove and, or abandon in place MIDSHIP Project in the fifty-foot (50') wide permanent pipeline easements, temporary workspace easements, permanent and temporary access road easements and permanent surface site easements as identified, described, and depicted in the Verified Complaint and exhibits thereto, and to exercise all of those rights and all other rights and be bound by all the terms set forth in the Verified Complaint"); *see also* Motion at Prayer for Relief ("Midship respectfully requests this Court to enter an Order (1) setting an expedited schedule for briefing and hearing; (2) confirming Midship's right to acquire the Easements by eminent domain under the Natural Gas Act; (3) awarding immediate possession of the Easements to Midship to enable commencement of on-site preconstruction and construction-related activities and to operate and maintain the pipeline pending final determination of just compensation; (4) establishing the type, amount, and

terms of security to be provided by Midship to secure payment of just compensation to Defendants upon a final determination of same; and (5) granting such other relief as the Court deems just and equitable. A proposed Order is attached." (Motion)[Dkt. 61].

All that Midship requested and all that the Court granted it was the right to immediate possession of the easements prior to a trial on just compensation.  Midship neither requested nor did the Court enter an injunction directly or specifically commanding respondents or anyone else to refrain from doing anything.  Even after respondents have removed the equipment and offered to enter into a stipulation not to interfere with Midship's operations, Midship insists upon a hearing in which it seeks to hold them in contempt of court for violating an order that did not command them to do or to refrain from doing anything.

Midship cannot retroactively cure its failure to seek a prohibitory injunction against Respondents by asking the Court to liberally construe the terms of the injunction it sought and received.  While courts in other jurisdiction may be willing to do so, the Tenth Circuit has made absolutely clear that injunctions are to be construed *strictly*. *See Consumers Gas & Oil, Inc.*, 84 F.3d at 371 ("[W]e are persuaded the better view is to construe Rule 65(d) strictly and thereby give effect to its plain, mandatory language. By reaching this result, we refrain from substituting ad hoc uncertainty for the rule's uniformity and clarity, and we advance two important functions performed by the rule: (1) to prevent confusion on the part of those faced with injunctive orders and (2) to aid the appellate court in defining the bounds of the injunctive relief").

Midship lacks a specific and definite order commanding Respondents to do or not

do anything. It never asked for one. It cannot retroactively cure its problem by asking the Court to re-write the terms of its injunction in a manner Midship never requested.

**PROPOSITION II:** **MIDSHIP PROCEEDS WITH A QUEST FOR CIVIL CONTEMPT SANCTIONS DESPITE THE FACT THAT RESPONDENTS HAVE COMPLIED WITH ITS REQUEST.**

Even if the injunction contained clear and specific prohibitions directed to Responsdents, Midship represents affirmatively to the Court that its Motion is one involving *civil* contempt. (Motion at ¶ 13)[Dkt. 642]. This is correct. Since *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 (1911), the federal courts have recognized that a civil contempt proceeding results in a *remedial sanction that will benefit the opposing party*. Id. at 441. Midship asks the Court to hold the above-named respondents in contempt of court, a sanction that will result in it having unimpeded access to property owned by respondent Chuck's Rig Repair. (Motion at Prayer for Relief, ¶¶ (a) and (b))[Dkt. 642].

However, Midship does not recognize elementary concepts of the law surrounding civil contempt. As the Court made clear in *Int'l Union, United Mine Workers of Amer. v. Bagwell*, 512 U.S. 821 (1994):

> The paradigmatic coercive, civil contempt sanction, as set forth in *Gompers*, involves confining a contemnor indefinitely *until he complies with an affirmative command* such as an order "to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." 221 U. S., at 442; *see also McCrone v. United States*, 307 U. S. 61, 64 (1939) (failure to testify). Imprisonment for a fixed term similarly is coercive when the contemnor is given the option of earlier release if he complies. *Shillitani v. United States*, 384 U. S. 364, 370, n. 6 (1966) (upholding as civil "a determinate [2-year] sentence which includes a purge clause"). In these circumstances, *the contemnor is able to purge the contempt and obtain his release*

5

> *by committing an affirmative act, and thus "`carries the keys of his prison in his own pocket.*' " *Gompers*, 221 U. S., at 442, *quoting In re Nevitt*, 117 F. 448, 451 (CA8 1902).

In this case, the owner of the property, Chuck's Rig Repair, LLC and its owner have removed the equipment of which Midship complains (April 25, 2019 Photo, Exh 1). In addition, they have offered to stipulate that they will not interfere with Midship's operations (April 24, 2019 E-mail at 11:25 a.m., Exh. 2).

This was not good enough. Midship insists upon burdening the Court with an evidentiary hearing for no apparent purpose other than to hold respondents in contempt of court <u>without</u> any opportunity to purge. *See e.g., United States v. Perry*, 116 F.3d 952, 956 (1st Cir. 1997)("Punishment for criminal contempt, on the other hand, is punitive and imposed to vindicate the authority of the court. 'Purging' is neither permitted nor possible. When a contempt involves the prior conduct of an isolated, prohibited act, the resulting sanction has no coercive effect. '[T]he defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense.'").

Hence, the relief sought by Midship is one that cannot be had in the context of civil contempt. *See Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238-39 (10th Cir. 2018)("The district court can impose coercive sanctions designed to compel obedience to a court order. But because coercive sanctions seek to avoid the 'harm threatened by continued contumacy,' the sanctions can remain only until the contemnor complies with the order. *O'Connor v. Midwest Pipe Fabrications, Inc.,* 972 F.2d 1204, 1211 (10th Cir. 1992) (*quoting United States v. United Mine Workers of Am.*, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). Thus, the sanctioned party must be able to immediately end the

sanction by complying with the court order. *See id*. at 1211-12; *see also Shillitani v. United States*, 384 U.S. 364, 370-71, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) (noting that a coercive sanction must give the contemnor an "opportunity to purge himself of contempt").

Respondents have complied with Midship's demands even in the absence of a prohibitory injunction. Thus, there would be no way to "purge" their alleged contempt if coercive sanctions were entered. Fortunately, this logical conundrum arises extremely infrequently because, unlike Midship, most contemnors recognize this basic principle and do not insist on proceeding with a civil contempt hearing seeking coercive sanctions when the respondent has already complied with the alleged terms of the court order well in advance of the hearing. Civil contempt provides for sanctions to coerce compliance with court orders. By Midship's own definition of that order, compliance has already occurred.

**PROPOSITION III:     IT IS UNCLEAR WHAT CENTRAL LAND CONSULTING DID THAT VIOLATED ANY ORDER**.

Midship's only complaint against Central Land Consulting is that it e-mailed Midship with what Midship contends is inaccurate information. This allegation, even if proven by clear and convincing evidence, violated no court order whatsoever.

**PROPOSITION IV:     THE COURT HAS WIDE DISCRETION IN FASHIONING A REMEDY.**

A district court has "broad discretion" in using its contempt powers to require adherence to court orders. *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1209 (10th Cir. 1992). Respondents respectfully submit that Charles White, a 70-year old resident of rural Tuttle, Oklahoma, suffers from congestive heart failure, utilizes oxygen, has great difficulty sleeping, and mobilizes via a wheelchair. This is the individual whom

7

Midship insists on holding in contempt despite the absence of a prohibitory injunction and despite the fact that Mr. White has caused the removal of the offensive equipment and has expressed his willingness to enter into a stipulation to refrain from any further interference. Respondents respectfully request that the Court take this into consideration, consider whether in light of these severe physical disabilities Midship has proffered a credible affidavit, *See* Pee Aff. at ¶ 5 [Dkt. 642-2](claiming that Mr. White appeared and brandished a firearm), and assess whether Midship's insistence on continued prosecution of its Motion is an example of its "high level executives" disregarding their own counsel's sound advice.  (April 25, 2019 E-mail, Exh. 1).[1]

## CONCLUSION

Respondents Chuck's Rig Repair, LLC, Central Land Consulting, and Charles C. White respectfully request that the Court deny the Motion and entertain such other and further relief as it deems appropriate in light of the facts and law set forth above.

---

[1] The entire point of the Motion is that Respondents have unduly delayed Midship's construction efforts.  Exhibit 2 negates that contention and is thus admissible under Fed.R.Evid. 408(b).

Respectfully submitted,


/s/ Joseph H. Bocock
Joseph H. Bocock
BOCOCK LAW PLLC
119 N. Robinson, Suite 630
Oklahoma City, OK 73102
Telephone: (405) 602-1591
Facsimile: (405) 602-1754
E-mail: joe@bococklaw.coms

--and—

/s/ John D. Stiner
John D. Stiner
STINER LAW FIRM, PLLC
119 N. Robinson, Suite 630
Oklahoma City, Oklahoma 73102
Telephone: (405) 602-1591
Facsimile:   (405) 602-1754
Email: john@stinerlaw.com

--and—

John Nelson
Park, Nelson, Caywood, Jones & Perryman, LLP
122 North Fourth Street
Chickasha, Oklahoma 73018
Telephone: (405) 224-0386
Facsimile: (405) 224-0907
E-mail: jnelson@pncj.com

**ATTORNEYS FOR CENTRAL LAND DEFENDANTS**

**CERTIFICATE OF SERVICE**

     I hereby certify that on April 25, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Thomas A. Zabel
Scott Seidl
Vadim O. Bourenin
David M. Box
Mason J. Schwartz
Mark Banner

                                       /s/ John D. Stiner