## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MIDSHIP PIPELINE COMPANY, LLC,** | § § § | |
| *Plaintiff,* | § § | **Case Number: 5:18-cv-858-G** |
| **vs.** | § § | **Judge: Hon. Charles Goodwin** |
| **TRACT NO. CN-0004.000, 1.504 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT IN CANADIAN COUNTY, OKLAHOMA,** *et al.,* *Defendants.* | § § § § § § § | |

## PLAINTIFF MIDSHIP PIPELINE COMPANY LLC'S EMERGENCY MOTION FOR CONTEMPT AGAINST DEFENDANTS SANDY CREEK FARM, LLC AND CENTRAL LAND CONSULTING, LLC

1.      Plaintiff Midship Pipeline Company LLC ("Midship") files this Emergency Motion for Contempt against Defendants Sandy Creek Farms, LLC ("Sandy Creek") and Central Land Consulting, LLC ("CLC) (collectively, "Defendants"), seeking to have this Court hold Defendants in contempt and grant other relief as necessary to restrain Defendants' further violation of this Court's Stipulated Order on Plaintiff Midship Pipeline Company LLC's Emergency Motion For Contempt And For Temporary Restraining Order issued on June 26, 2020 (Doc. No. 706).   Midship further moves this Court for an order directing Defendants to comply with the terms of the Order, which, in pertinent part, granted Midship an immediate right of entry and access to the easements identified as Tract Nos. GR-0336.000, GR-0338.000, GR-0340.000, and GR-0340.010 in

the Second Amended Verified Complaint and exhibits thereto (the tracts are individually referred to herein by applicable Tract number; and the easements are collectively referred to herein as the "Easements").   Midship also seeks to recover its attorneys' fees and costs in preparing and presenting this Motion.   In support of this Emergency Motion for Contempt, Midship shows as follows:

2.      Sandy Creek is the owner and CLC is the alleged option holder on the Tracts at issue. Midship filed a Verified Complaint for Condemnation against Defendants. Midship is the holder of a Certificate of Public Convenience and Necessity ("Certificate") issued on August 13, 2018, by the Federal Energy Regulatory Commission ("FERC"). The Certificate confers upon Midship the right to, *inter alia*, construct a natural gas pipeline (the "Natural Gas Pipeline") under and across the lands of various landowners in the state of Oklahoma.

3.      On February 6, 2019, this Court entered an Order granting Midship immediate access to and possession of all the easements more particularly described in the Verified Complaint and Amendment thereto ("Order"). ECF No. 613 at 10. The Order applies to all parties, including Defendants, and in pertinent part, states as follows:

> For these reasons, the Court determines that Midship has met each of the elements necessary for issuance of a preliminary injunction. Midship is awarded immediate possession of the Easements to enable commencement of on-site preconstruction- and construction-related activities and to operate and maintain the Pipeline pending final determination of just compensation.

*Id.* Midship has posted a security deposit, and entered onto the Easements and commenced construction of its pipeline thereon.

4.     On June 5, 2020, Midship filed with this Court an Emergency Motion for Contempt and for Temporary Restraining Order against Defendants alleging that Defendants interfered with Midship's possession and use of the Easements by, *inter alia*, intermittently flooding the Easements (the "Emergency Motion"). *See*  Doc. No. 693. Affidavits/Declarations in support of the Emergency Motion are incorporated herein in full.  One of the allegations of the Emergency Motion was flooding of the Easements by Defendants' pressurizing a ruptured waterline causing a temporary cap installed within the line near the point of rupture to fail and allowing substantial volumes of water to come onto the Easements through the ruptured pipe.  *Id.*  Other allegations in support of the Emergency Motion were that Defendants intentionally breached an earthen berm installed by Midship's contractor on one side of the easement to prevent water from flooding the Easements from an adjacent field, in several locations, again flooding the Easements with water. The Court held a hearing on the Emergency Motion on June 26, 2020.  After the hearing,  the parties entered into a stipulation resulting in the Court issuing a Stipulated Order (Doc. No. 706) that, in part,  ordered:

> Defendants or any person or entity acting on their behalves or at their direction **shall immediately cease and desist any actions to cause inundation of the Easements**; however, Defendants shall not be required to alter their customary irrigation operations that do not interfere with Midship's restoration of the Easements; however, Defendants are not obligated to control or change natural drainage or stormwater discharge upon the ground or that naturally overflows from the ponds solely as a result of rainfall. Notwithstanding the foregoing, **Defendants shall not irrigate, release, pump, or discharge water or any other substance in any location that can reasonably interfere with the restoration work**. . . .

Defendants or any person or entity acting on their behalves or at their direction **shall not take any action or engage in any other activity that will cause additional costs or delay in Midship's restoration of the Easements.**

*Id.* at p. 3. (emphasis added).

5.     After the issuance of the Stipulated Order, Midship and its contractors resumed restoration work on the Easements and have been working diligently to complete surface restoration on the Easements on Tract No. GR-0338.000.   However, on July 28, 2020, the repaired waterline traversing the Easements began seeping into the restored portion of the Tract from the area where the water pipeline crosses the Easements and where the repair to the line located. *See* Exhibit 1,  Declaration of  Angel Elicerio ("Elicerio Declaration").   Specifically, on July 28, 2020, Midship contractor's superintendent Angel Elicerio observed elevated activity of Steve Barrington and others off Midship's Easements.  *See* Elicerio Declaration at ¶1.  Between 4 and 5 pm on July 28, 2020, Elicerio's crew noticed water seeping out of the ground in the location where the Sandy Creek Farm 8" water line crosses the Easements.  *Id*. at ¶3.  To prevent any ground disturbance, no work had been performed over the water line by the crew without use of protective matting.  *Id.* At the same time, Elicerio and his crew could hear Defendants' booster pump running, while no active irrigation was occurring to explain the running of the pump.  *Id.* at ¶4.

6.     Requests to the Defendants to shut off the flow of water onto the Easements were not honored and water continues to seep from the water line within the Easements.

7.     Further on July 28, 2020, Steve Barrington threatened both Midship's

contractor's employees and even a sheriff's deputy.  *See* Eliceirio Declaration at ¶¶ 4-6;
*See* Ex. 2—Statement received from Officer Shannon Farnan.  Midship is awaiting the
completion of the formal police report and a statement from Deputy Peek and will provide
same to the Court once it is obtained.

    8.    Shannon Farnan, an off-duty officer retained to provide security at the Tract,
arrived at the Easements and was shown where water was seeping on the Easement from
under the mulch.  *See* Ex. 2 (witness statement of Farnan-signed declaration is in transit
and will be filed as supplemental evidence).  Farnan was advised that a valve on the
property off the Easement had to be turned off to stop the flow of water. *See* Ex. 2.  Farnan
relayed that he was informed that the crew observed via a drone that a pipe was missing
and wiring disconnected at the pivot a few days ago, as seen through drone imaging.  In
a phone call placed by Farnan and his fellow security officer Chris Looney, to Ken
Barrington, one of the Sandy Creek Farm owners, asking him to turn the valve off, Ken
Barrington asserted that the valve was under water and could not be turned off until the
water is drained from the pond.  Deputy Peek of the Grady County Sheriff's Office, who
was called to respond to the situation arrived on the Easement and Farnan explains what
occurred upon his arrival:

> *While Midship employees were filling out statements, a white Ford F-250*
> *pulled down. Deputy Peek approached the vehicle and spoke to the*
> *occupants who exited. After a short while Deputy Peek asked me to show the*
> *man, who I later learned to be Steve, the leak in the right of way. While*
> *walking to the right of way, Deputy Peek and Steve got into an argument.*
> *Deputy Peek said something to the effect of, you might be used to being the*
> *boss but you're not my boss. Steve walked back to his truck and left with his*
> *passenger.  Afterwards, Deputy Peek told us that Steve had said something*
> *to the effect of, The next person he felt threatened by he would fill full of*

*holes.*

*See* Ex. 2.  To avoid any possible confrontation, Midship employees and contractors left the Easements when they saw three Defendants' vehicles returning to the Easements. *See* Ex. 2.  This was not Steve Barrington's first reference to shooting people. Months earlier during easement dewatering operations, Mr. Barrington told one of Midship's inspectors that if Mr. Barrington came back out there and found dewater still occurring he would give everyone "lead poisoning." This statement was made in the presence of a security officer. Due to these threats, Midship was forced to hire additional security and law enforcement personnel to stay on the Easements to insure the safety of Midship and contractor personnel.

9.     Since the Court entered its June 26, 2020 Order, two other incidents occurred, which precede the recent water seepage issue: Steve Barrington appeared on the easement during restoration in the vicinity of heavy equipment and caused safety concerns and on or about July 22, 2020, someone cut Strike's drainage lines and removed filter bags from the Easements.  Defendants' counsel was notified of these incidents and  there were no other post order incidents until the July 28, 2020 water seepage incident.   Midship is still investigating and collecting information with respect to the July 28, 2020 incident and will be prepared to present police reports and testimony at a hearing on this Motion.

10.    Defendants' conduct is once again delaying Midship and its contractors from completing its restoration activities on the easement area on Tract No. GR-0338.000.

11.    Defendants' actions have substantially increased construction and restoration

6

costs associated with this Tract No. GR-0338.000.  If there is no further interference with Strike's restoration activities, weather permitting, restoration can be completed in less than a week on the Sandy Creek Farm easements.   It is difficult if not impossible for Midship to calculate the increased costs of restoration of the easement area on Tract No. GR-0338.000 due to Defendants' continued interference with Midship's possession and use of the easement area.   These increased costs cannot be calculated with any reasonable degree of certainty.  Due to Defendants' wrongful conduct, restoration that should have been completed long ago,  has been stalled for over six months, with Midship and its contractors repeatedly being forced to dewater the easement area on Tract No. GR-0338.000, and then performing what limited amount of work that can be accomplished prior to Sandy Creek re-flooding the Easements.  In addition to the delays caused by the constant requirement that the Easements on Tract GR-0338.000 be dewatered and dried out, the constant re-flooding of the Easements has required Midship and its contractors to perform certain aspects of restoration over and over again—*e.g.* the leveling of the easement area, segregation of topsoil and subsoils, removal of silt deposited on the Easements, etc.

12.     If Defendants are not immediately restrained from taking actions to impede or delay the restoration operations on the Easements on Tract No. GR-0338.000, Midship will never be able to fully complete restoration of the Easements.

13.     Defendants' actions constitute an impermissible interference with Midship's possession of the Easements on Tract No. GR-0338.000 and its rights granted by the Court, and are in direct violation of the Stipulated Order.  Midship has a clear right to be

upon Sandy Creek's property pursuant to the terms of the Court's Orders.  Such right is independent of whether the parties have agreed as to the amount of just compensation due to Defendants or any terms of a proposed written permanent easement.

WHEREFORE, Plaintiff Midship Pipeline Company, LLC respectfully requests that this Court enter an order that provides the following relief:

(a)     Finding Sandy Creek and CLC in contempt of the Stipulated Order;

(b)     Ordering Sandy Creek (including its representatives and/or principals) to (i) immediately turn off any pump connected to the water line which traverses the Easements and to not turn on that pump until Midship demobilizes from the easements after restoration is completed,  and (ii) cease and desist from taking any other actions to inundate Easements on Tract No. GR-0338.000 with water, or otherwise interfere with the restoration work;

(c)     Restraining Sandy Creek (including its representatives and/or principals) from destroying or tampering with any device, including earthen berms or other flood control devices, that are located on the Easements whose principal purpose is to keep the Easements dry enough for restoration activities to be completed thereon and from entering upon the Easements until Midship and its contractors demobilize from same after completion of restoration;

(d)     Restraining Sandy Creek representatives and/or principals from threatening, assaulting, harassing, or stalking Midship employees, contractors or representatives or approaching any of them on the Easement

and from entering upon the Easements until Midship and its contractors demobilize from the Easements after completion of restoration operations;

(e)    Awarding Midship its attorneys' fees and costs for preparing and pursuing this Motion; and

(f)    Granting Midship such other and further relief as is just and proper.

Respectfully submitted,

/s/ *Thomas A. Zabel*
Thomas A. Zabel (Attorney in charge)
Texas Bar No. 22235500
tzabel@zflawfirm.com
Vadim Bourenin
Texas Bar No. 24076284
vbourenin@zflawfirm.com
1135 Heights Boulevard,
Houston, TX 77008
713-802-9117 (telephone)
713-802-9114 (facsimile)
and

WILLIAMS, BOX, FORSHEE & BULLARD, PC
David M. Box, OBA #21943
Mason J. Schwartz, OBA #32864
522 Colcord Drive
Oklahoma City, OK 73102-2202
405-232-0080 (telephone)
405-236-5814 (facsimile)
box@wbfblaw.com
dmbox@wbfblaw.com
and

HALL, ESTILL, HARDWICK,
GABLE, GOLDEN & NELSON, P.C.
Mark Banner, OBA #13243

320 North Boston, Suite 200
Tulsa, OK 74103-3706
Telephone: (918) 594-0432
Facsimile: (918) 594-0505
Email: mbanner@hallestill.com

**Attorneys for Plaintiff**
**Midship Pipeline Company, LLC**

### Declaration

Pursuant to 28 U.S.C. § 1746, I declare and certify under penalty of perjury under the laws of the United States of America that I have reviewed the foregoing motion and the factual statements made in paragraphs 11 and 12 thereof are within my personal knowledge and true and correct.

_____
Suzanne Hickham

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been filed and served via this Court's ECF/CM system on all the counsel of record.

_____/s/Thomas Zabel_____
**Thomas Zabel**