# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MIDSHIP PIPELINE
COMPANY, LLC,

§
§
§

            *Plaintiff*,

§
§

Case Number: 5:18-cv-858-G

        vs.

§
§
§

Judge:  Charles Goodwin

TRACT NO. CN-0004.000,
1.504 ACRES OF LAND, MORE
OR LESS, PERMANENT
EASEMENT IN CANADIAN
COUNTY, OKLAHOMA, *et al.*,

§
§
§
§
§
§
§

            *Defendants*.

§

## MIDSHIP PIPELINE COMPANY LLC'S REPLY TO DEFENDANTS' OPPOSITION TO MIDSHIP PIPELINE COMPANY, LLC'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ALLEGED DAMAGES CAUSED TO DEFENDANTS' PROPERTIES BY NEGLIGENCE, NUISANCE OR TRESPASS DURING CONSTRUCTION OF THE MIDSHIP PIPELINE

Plaintiff Midship Pipeline Company, LLC ("Midship") files this reply to the Defendants' Opposition to Midship's Motion in Limine to Exclude Evidence of Alleged Damages Caused to Defendants' Properties by Negligence, Nuisance or Trespass During Construction of the Midship Pipeline[1] ("Response"). Dkt. 743.

## BACKGROUND

On February 6, 2019, this Court granted Midship immediate possession on February 6, 2019, (Dkt. 613), and Midship, having posted security deposit ordered by the Court on

---

[1] Response conveniently excludes reference to "negligence, nuisance or trespass" from the name of the Midship's Motion prejudicially inciting impression that Midship attempts to exclude any and all possible claims for damages.

1

February 8, 2019, immediately began construction activities on the easements. The Court has given clear instructions to the Commission on how just compensation is to be determined:

> The term "just compensation" means the money that will make the landowner whole . . . In this case this amount of money includes (1) the fair market value of the easements on each property in question on February 8, 2019 (the date of taking), plus (2) any injury to the property left remaining after the taking. . . . In determining the injury to the remaining property, you should determine how much, if at all, the fair market value of this property diminished as a result of the taking of the easements on February 8, 2019.

*See* Court's Instructions, Dkt.708 at pp. 11-12. What is abundantly clear from this instruction is that damages, if any, to the remainder of a tract are to be determined as of the imposition date of the easements (*i.e.*, February 8, 2019), and are to be determined as a result of the imposition of the easements on the land on that date, not activities that occur after the date of taking. In direct contravention to the Court's instruction, Sandy Creek Farm, Inc. ("SCF") seeks to recover allegedly as "just compensation" damages for post-taking alleged negligent construction-related issues (alleged failure to restore, damage to improvements, mixing of top soil, etc.), which are tort claims, and, as SCF concedes, cannot be brought in a federal condemnation case (hence why it seeks to wrongfully include such "damages" as part of just compensation, as opposed to separate tort claims). Midship is not asserting that SCF has no remedy if it is ever able to establish the veracity of any of its post-taking tort claims, but such claims cannot be presented in this condemnation action.

In the Response, SCF ignores the Court's clear instruction on just compensation and unsuccessfully attempts to distinguish the cases cited by Midship by misinterpreting or

omitting the relevant holdings in the cited cases, or by misstating or misinterpreting Midship's allegations.

## DISCUSSION

The guiding rule is stated in 4 Nichols, Eminent Domain, § 14.245[1], pp. 626-628 (Revised 3d Ed.): "'If the damage for which recovery is sought is the result of improper, unlawful or negligent construction * * * recovery may not be had therefore in the [condemnation] proceeding; the owner is relegated in such case to a common-law action for damages.'"

### Federal Versus State Law in Determining Just Compensation

At the outset, SCF relying on *Tennessee Gas Pipeline Co., LLC v. Permanent Easement For 7.053 Acres*, No. 17-3700, 2019 WL 3296581, at * 12 (3rd Cir. July 25, 2019) (judge Chagares dissenting), *Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement*, 962 F.2d 1192, 1199 (6th Cir. 1992) and *Bison Pipeline, LLC v. 102.84 acres, more or less*, No. 11-8052, 560 Fed. Appx. 690, 695 (10th Cir. Oct. 17, 2013), asserts that state, and not federal, law applies to determination of just compensation in this condemnation action. While the Third and Sixth Circuit indeed incorporated state substantive law as the federal standard of measuring just compensation, the Tenth Circuit in *Bison* has not done so. In *Bison*, the parties initially *stipulated* that Wyoming eminent-domain statutes determined just compensation. *See Bison*, 560 F. App'x at 693. However, on appeal, the Tenth Circuit faced an issue of whether Wyoming eminent domain law is so oppressive to pipeline companies that it violates the U.S. Constitution and so frustrates federal law that it triggers federal preemption. *See id*, at 694. The Tenth Circuit found that

Wyoming statutes did not frustrate the Natural Gas Act, but also noted that, under a different set of facts, the holding may be different. *Id.* at 696 (rejecting federal-preemption argument. But whether federal or state law governs the determination of just compensation, SCF cannot get around this Court's instructions on just compensation and either introduce or recover alleged damages for post-taking alleged negligent construction-related issues (alleged failure to restore, damage to improvements, mixing of top soil, etc.), which are tort claims, not allowable in a federal condemnation action, and the consideration of which would be inconsistent with the Court's clear instructions.

### SCF's Rejection of the Court's Instruction on Just Compensation

In its Opposition to Midship's Motion, SCF offers four reasons why "remediation costs rather than before and after is the appropriate measure of compensation." But, the Court's instructions do not provide for an alternative means to determine just compensation which the Court sets forth as the value of the easements on the date of taking plus damages, if any, to the remainder due to imposition of the easements on February 8, 2019. Aside from veering outside the Court's instructions, the four reasons given for a complete departure from the instructions are not persuasive. SCF first asserts that comparable sales for an irrigated farm in Oklahoma are limited. Aside from the fact that Midship's licensed appraiser was able to find comparable sales of farm land used for hay production, it seems far-fetched that other irrigated farms do not exist in Oklahoma. In any event, even if comparable sales were limited, that would not justify a departure from the Court's instructions on how just compensation is required to be determined.

Second, SCF's contentions that post-date of taking alleged construction damages are extensive and that SCF's appraiser is allegedly unable to conduct a before and after evaluation are without merit, as such appraiser is supposed to determine the value of the easements as of the date of taking and damages, if any, to the remainder of the SCF lands as a result of the imposition of the easements on February 8, 2019, and not speculate as to the existence or extent of post-date of taking alleged negligent construction damages, *i.e.*, alleged tort damages which cannot be brought or considered in this condemnation action.

Third, SCF has a remedy by separate action to address any alleged post-date of taking negligent construction claims, and the fact that SCF's remedy for post-date of taking negligent construction claims has to be pursued outside the confines of this condemnation action is not a justification for ignoring the Court's instructions as to the manner in which just compensation is to be determined.

Fourth, SCF's argument that Midship can avoid responsibility for restoration costs and be thus unjustly enriched ignores not only FERC's oversight of required remediation activities, but also SCF's ability to seek recourse for any failure by Midship to do so outside the confines of this condemnation action, if it can provide any credible evidence to support its claims.[2]

---

[2] SCF fails to inform the Commission that in this case, contempt hearings were held by the Court to address claims that SCF intentionally caused and, or contributed to the flooding of the right-of-way during construction operations. Moreover, SCF also fails to mention that a lawsuit by Midship's construction contractor Strike, alleging that SCF caused or contributed to the alleged damages (flooding, washing off topsoil, etc.), is pending in this court.  *See Strike, LLC v. Sandy Creek Farms, Inc, et* al, Case No. 5:20-cv-00571-G (Ok. W.D.).

Aside from the Court's instruction on just compensation, SCF is simply wrong that the cost of restoration is a proper methodology for determining compensation in this condemnation action. SCF wrongfully relies on the *Mingo* case, discussed in Midship's Motion. Suffice it to say that the cost of restoration is a proper methodology only in condemnation actions where rare properties which have no market value are taken, such as public facilities or schools, and restoration of the taken improvements is the only means of replacing what was taken. The issue in *Mingo* was not whether the court had jurisdiction over claims of alleged damages caused by alleged tortious acts or omissions during construction, but, rather, whether the cost of a substitute facility or cost-to-cure could be used as a method to determine just compensation for a taking of a *publicly-owned public purpose property*, a school in that case. Moreover, *Mingo* Court recognized the limited application of that method. *See Mingo*, 559 P.2d at 493 (discussing applicability to public-purpose properties, for which there is no market – parks, highways, schools) (citing to *United States v. Miller*, 317 U.S. 369 (1943)); 4 Nichols on Eminent Domain, § 12.32; (Rev. 3d Ed. 1975), Comment. *Mingo* Court itself recognized that the Supreme Court of Oklahoma in *State v. Levick*, 1961 OK 215, 365 P.2d 141 instructed that for partial taking on non-publicly owned property:

> the 'cost of the replacement of the dirt and gravel is not the measure of damages and such evidence should not have been permitted.' The court felt that the before and after market value role was the only appropriate standard for determining the condemnee's damages and that consequently **evidence of restoration cost was inadmissible**.

*Mingo School District*, 559 P.2d at 492 ("We agree that the principles of *Levick* stand as a barrier to evidence of the cost of restoring the remaining land in most cases."). *See also*

*Religious of the Sacred Heart v. City of Houston*, 836 S.W.2d 606, 608 (Tex. 1992) (Texas Supreme Court held that substitute facilities doctrine only applies to the taking of public property and does not apply to private property). No property in this case is a publicly owned public purpose property; by Defendants' own disclosures properties, such as theirs, are sold and bought on the market and have a market value, and, therefore, *Mingo* has no application in this case.

### SCF's Futile Attempt to Distinguish Midship's Cases

SCF futile attempts to distinguish Midship's cases are apparent. For example, SCF asserts that in the *U. S. v. 103.38 Acres of Land*, 660 F.2d 208, 211 (6th Cir. 1981), "the court explained that the date of the taking was used not as a means to cut off damages but to ensure that owners are returned to their pre-taking position." Dkt. 743 at p.8. Yet, neither the cited page nor any other text in that decision contain such an explanation, instead discussing use of royalty capitalization for valuing coal deposits.[3]

SCF purports to distinguish *U.S. v. 79.20 Acres of Land*, 710 F.2d 1352, 1356 (8th Cir. 1983) (citing to *Old Dominion Land Co. v. United States*, 269 U.S. 55, 65, 70 L. Ed. 162, 46 S. Ct. 39 (1925)[4], as "the court denied $1500 for post-take damage to a well when the landowner had already been paid for it before the taking. Here, the landowner has yet

---

[3] The case contains cited by Midship principle that "owner is entitled to the 'fair market value' of his property **at the time it is condemned.**" *103.38 Acres of Land*, 660 F.2d at 211.

[4] Midship agrees that this case is the proper citation to the quote erroneously attributed on p. 6 of the Motion to *U.S. v. 50 Acres of Land*, 469 U.S. 24, 29 (1984).

to be paid."[5] Dkt. 743 at p.8. The *79.20 Acres* court did not discuss the well payment in relation to the date of taking, except to note that, when an easement for the well *had* been granted earlier, further condemnation would not deprive of any rights requiring compensation to the same well at the time of taking. *See 79.20 Acres of Land*, 710 F.2d at 1356.

SCF then seeks to distinguish *First Nat'l Bank v. Brunswick,* 350 F.2d 606 (5th Cir. 1965) and *Washington Metro., Etc. v. One Parcel of Land, Etc.*, 549 F. Supp. 584, 591 (D. Md. 1982), by contending that the damages in those cases were outside the easements sought and thus not applicable here. While SCF seeks to recover in this action for post-date of taking alleged negligent construction damages both inside and outside the easements sought,[6] in either instance such claims are improper and cannot be brought in this condemnation case.  Notably, in *79.20 Acres of Land*,  the Court found those to be "precisely the kind of damages * * * not compensable in a condemnation proceeding." The court explained:

---

[5] With regard to the latter assertion – as discussed above, Midship deposited court-ordered funds with the court on February 8, 2019.  Per Court's order, SCF, together with all other landowners in the case, are entitled to withdraw the funds posted as just compensation.  *See* Dkt. 614 at p.2. While SCF can choose not to withdraw available funds, if it chooses not to do so, it should not complain about the entire lack of  adequate security for the payment of just compensation. Similarly, to date, SCF (as other CLC-affiliated defendants) declined to provide any tax returns or other SCF documents to verify their claimed crop losses.

[6] Vickers' estimate for "restoration" of SCF property envisions activities on 42 acres, while the permanent and temporary rights-of-way on the property comprise approximately 26 acres; one of the spreadsheet claiming SCF damages contends "358.5 Off-ROW Acres Affected," while the other alleges 60 acres off-row affected; defendant Burchfield claims 8.27 acres (or 5.19 in other submission) off-row areas affected; defendant Morris claims 4.40 and, or 56.37 acres off-row affected including by silt flowing from the right-of-way.

This Court distinguishes between severance damages, compensable in a condemnation proceeding and damages to the remainder **caused by physical invasion of the remainder resulting from the intended use of the land taken**. The latter are not compensable in the condemnation case * * * **the spreading of debris is a physical invasion and not compensable during condemnation proceedings**. **That type of claim is a counterclaim over which the District Court has no jurisdiction in a condemnation case**.

*79.20 Acres of Land*, 710 F.2d at 1356 (citing to *U.S. v. 38.60 Acres of Land*, 625 F.2d 196, 200 (8th Cir. 1980)).

SCF attempts to distinguish the recent decisions in the Rover pipeline cases, where federal courts in the Midwest dealt with post-date of taking alleged negligent construction issues similar to those SCF raises here. *Rover Pipeline, LLC v. 1.23 Acres of Land*, involved allegations of damages from construction of a 36-inch gas transmission line on blueberry and sod farms that included, *inter alia*, failure to properly restore the easements, soil mixing, loss of soil, post construction drainage issues. Rover Pipeline, the condemner, moved *in limine* to exclude evidence of these damages allegedly caused to the subject properties by negligence, nuisance, or trespass during construction of the pipeline. *See Rover Pipeline, LLC v. 1.23 Acres of Land*, No. 17-CV-10365, 2018 U.S. Dist. LEXIS 112211, at *51 (E.D. Mich. July 6, 2018). The Court granted the motion holding that it is "well-settled that damages to the remainder property during construction are not compensable in a condemnation proceeding. *Id*; *accord Texas E. Transmission, LP v. A Permanent Easement of 0.5 Acres*, No. 1:14-CV-354, 2019 WL 1437871, at *3 (M.D. Pa. Apr. 1, 2019) (citing to *Rover Pipeline, LLC v. 1.23 Acres of Land*, 2018 U.S. Dist. LEXIS 112211, at *51 (E.D. Mich. July 6, 2018)).

SCF seeks to distinguish the *1.23 Acres* decision based on the fact that the FERC Certificate and Environmental Impact Statement issued for the Rover pipeline required Rover to pay for damaged timber, but then similarly does the Midship's FERC Certificate. *1.23 Acres* Court rejected the landowner's argument that the FEIS requirement to pay for timber created a contract and committed condemner to additional damages recoverable in the condemnation action.   After analysis of the relative language of the Certificate and FEIS (not dissimilar to the language in Midship's FEIS and Certificate, *see e.g.*, Dkt. 625-5, FEIS, at p. 29), the court found that the documents do not show a contractual promise to provide damages "in addition to any amount above just compensation." The *1.23 Acres* Court held that even if Rover breached the FEIS and Certificate, FRCP 71.1 would bar a breach of contract counterclaim in the eminent domain proceeding. *Id.* at *23-24  (citing to *United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 380 (4th Cir. 1995)).

SCF then addresses *Columbia Gas Transmission v. 252.071 Acres More or Less in Baltimore City*, 216 U.S. Dist. LEXIS 15138865, *11-15 (D.Md. 2016), where the court disallowed defendants' discovery of the pipeline's construction plans, holding that they did not relate to the value of the property because "the posture of this case is well beyond speculative damage; damage to the property has already occurred and an appraiser has already opined that it impacts the property value." But the posture of that case was the same as in this case: determination of just compensation for the taking. The court's reason for denying the motion to compel was because the plans sought would not shed light on the value of the property taken or its remainder *at the time of the taking*, and "any claim for

damages caused by Columbia's **activities on or around the easements after the date of taking** must be brought in a **separate** action.  *Id*. (emphasis added).

SCF attempts to dispatch cases barring counterclaims by asserting that neither SCF nor other defendants have filed counterclaims in this case. Dkt. 743 at p.13. But SCF's post-date of taking alleged negligent construction claims sound in tort, and are an improper ruse to assert a counterclaim in a federal condemnation case. *See* discussion on de facto counterclaims *supra 79.20 Acres of Land*, 710 F.2d at 1356, *38.60 Acres of Land*, 625 F.2d at 200.

**Oklahoma Cases**

Aside from the *Mingo* case discussed above, SCF alleges that Midship misinterprets *State ex rel. DOT v. Post*, 2005 OK 69, ¶ 15, 125 P.3d 1183, 1188, cited by Midship for the proposition that a condemnee's damages are determined as of the date when the property is taken. *See* Doc. 743 at p. 9.   The *Post* court was dealing with a challenge to the propriety of the date selected for the date of taking, and relied, in part, on guidance in *Stinchcomb v. Oklahoma City*, 1921 OK 154, 81 Okla. 250, 198 P. 508.  In *Stinchcomb*, at the time the condemnation began there was wheat planted on the condemned land.  The commissioners filed their report on March 9, 1917, the condemnor made a payment on April 25, 1917, and the court instructed the commissioners that the date of taking was March 9, 1917.  Reversing the trial court, the Oklahoma Supreme Court determined that the date of taking is dictated by the date of the deposit of the commissioners' award, instructing:

> If the wheat crop had matured prior to April 25, 1917, the plaintiff in error would have had the right to have harvested and disposed of said crop. He had the proprietary right to and owned the wheat crop until April 25, 1917. * * * **The market value should be determined as of the date of the taking**…

*Id*. at 513 (emphasis added). In this case, Midship deposited the funds on February 8, 2019, and the Court set that date as the date of taking to be a threshold point for the calculation of just compensation which must be determined by the sum of the value of the easements as of the date on take on February 8, 2019, and damages, if any, to the remaining lands as of the imposition of the easements on such date.

## CONCLUSION AND PRAYER

For all of the foregoing reasons, and those in Midship's Motion in Limine to Exclude Evidence of Alleged Damages Caused to Defendants' Properties by Negligence, Nuisance or Trespass During Construction of the Midship Pipeline, Midship respectfully requests that the Court grant Midship's Motion.

Respectfully submitted,

/s/*Thomas A. Zabel*
ZABEL FREEMAN
Thomas A. Zabel (Attorney in charge)
Texas Bar No. 22235500
tzabel@zflawfirm.com
Vadim O. Bourenin
Texas Bar No. 24076284
vbourenin@zflawfirm.com
1135 Heights Boulevard,
Houston, TX 77008
713-802-9117 (telephone)
713-802-9114 (facsimile)

and

WILLIAMS, BOX, FORSHEE &
BULLARD, PC
David M. Box, OBA #21943
Mason J. Schwartz, OBA #32864
522 Colcord Drive
Oklahoma City, OK 73102-2202
( 405) 232-0080
(405) 236-5814 Fax
box@wbfblaw.com
dmbox@wbfblaw.com

and

HALL, ESTILL, HARDWICK,
GABLE, GOLDEN & NELSON, P.C.
Mark Banner, OBA #13243
320 North Boston, Suite 200
Tulsa, OK 74103-3706
Telephone:  (918) 594-0432
Facsimile:  (918) 594-0505
Email:  mbanner@hallestill.com
**ATTORNEYS FOR PLAINTIFF,**
**MIDSHIP PIPELINE COMPANY, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served via ECF/CM this 1st day of February, 2021, on all counsel for those Defendants for whom appearances have been entered and will be served on unrepresented Defendants by mailing to the last address known via U.S. first-class mail .

/s *Thomas Zabel*
Thomas A. Zabel